## PARRISH *v.* STATE.

## *(Nashville.*   December Term, 1913.)

**1. CRIMINAL LAW.   Evidence.   Other offenses.**

In a prosecution for placing in the yard of a negro, a note telling him that he was given twenty days to leave the State, or he would otherwise be killed, evidence of other outrages against the negroes in that vicinity, and of the fact that the trial of accused upon a charge of shooting into the prosecutor's house was interrupted by force, was inadmissible as showing the intent of the threats; the note being unequivocal, and there being no showing of a general scheme on the part of accused to intimidate the negroes of that community.   (*Post,* *pp.* 274-278.)

**2. CRIMINAL LAW.   Appeal.   Review.   Harmless error.**

In a prosecution for placing in the yard of a negro a communication warning him to leave the country, or that he would be killed, the admission of evidence of other outrages committed upon negroes in that vicinity, and of the trial of accused for shooting into the prosecutor's house, was prejudicial, where the evidence tending to show accused's guilt was nicely balanced.   (*Post,* *pp.* 274-278.)

Cases cited and approved:   Coleman v. People, 55 N. Y., 81; Peek v. State, 21 Tenn., 78; Queener v. Morrow, 41 Tenn., 123; People v. Molineux, 168 N. Y., 264; Price v. Clapp, 119 Tenn., 430.

---

FROM SMITH.

---

Appeal from Criminal Court of Smith County.—J. M. GARDENHIRE, Judge.

129 Tenn.—18

McGinness & Ligon, for appellant.

Wm. H. Swiggart, Jr., assistant attorney general, for the State.

Mr. Justice Lansden delivered the opinion of the Court.

The prisoner was indicted and convicted for violating section 4633 of the Code of Tennessee (Shannon's Code, sec. 6474), which is as follows:

"If any person, either verbally or by written or printed communication, maliciously threaten to accuse another of a crime or offense, or to do any injury to the person or property of another, with intent thereby to extort any money, property, or pecuniary advantage whatever, or to compel the person so threatened to do any act against his will, he shall, on conviction, be punished by imprisonment in the penitentiary not less than two nor more than five years."

It was alleged in the indictment, and the State offered evidence to prove, that the prisoner deposited in the prosecutor's yard a note which contained the following:

"Sid Harvey: You are given twenty days to get out of the State. Otherwise you will be killed."

The prisoner denied that he deposited this or any other note in the yard of the prosecutor, and offered witnesses whose testimony tended to establish an alibi for him.

In the view which we have taken of the case, it is not necessary to express an opinion upon the weight

Parrish v. State.

of the testimony as to the prisoner's guilt, further than to say that the evidence of the prosecutor, his wife, and son tended to establish guilt, while the evidence of the prisoner, his daughter, and other witnesses, who appear to be disinterested, tend to show his innocence. The trial judge permitted the State to prove, in addition to the fact that the prisoner deposited a note in the prosecutor's yard, the further fact that the prosecutor's house had been dynamited on previous occasions, and that his house had been shot into. It is also shown that considerable excitement and feeling existed between the white and colored races in the neighborhood where the prosecutor and the prisoner live, and that some parties had been "night-riding" the negroes of that neighborhood, so much so that numbers of negroes had moved away. It was also proven by the State that on the day preceding the night on which it is claimed the prisoner deposited the note in the prosecutor's yard there was a trial of the prisoner before a justice of the peace upon a charge lodged against him by the prosecutor of shooting into the prosecutor's house, and that on that day certain parties unknown assaulted counsel for the prosecution and broke up the trial. It was further proven that the white people of that community had employed detectives to apprehend the persons perpetrating the outrages on the colored people. This evidence was objected to by counsel for the prisoner, and the trial judge admitted it over the objection for the purpose, as stated in the bill of exceptions, of explaining the

state of mind of the negroes, and to shed light upon the probable effect of the note on the minds of the negroes, and to further explain their actions and con duct in remaining up all night watching their house.

But in his charge to the jury the court said, speaking of this evidence:

"You will bear in mind that the defendant is not on trial for such offenses, and this evidence can only be looked to as illustrating the purpose and intent of the threats, and in shedding light on the same."

There can be no doubt but`that the general rule in this country is that a person accused of crime cannot be convicted of one offense upon proof that he committed another. *Coleman* v. *People*, 55 N. Y., 81. This general rule has an exception in this state to the effect that, where knowledge of the accused of the quality of the particular act for which he is being tried is an element of the offense, evidence of other acts of like 'character is competent to show such knowledge. The same exception, in many cases, obtains as to motive and intent. *Peek* v. *State*, 2 Humph., 78. But where the collateral fact offered in evidence is incapable of elucidating the principal matter in dispute, it is error to admit it. *Queener* v. *Morrow*, 1 Cold., 123. A full discussion of the general rule with its exceptions is found in *People* v. *Molineux*, 168 N. Y., 264, 61 N. E., 286, 62 L. R. A., 193, and the very elaborate notes thereto.

It is not contended in the State's testimony that the prisoner had any connection directly or indirectly with

Parrish v. State.

the collateral crimes which were proven upon the trial. He denies that he had any such connection, and the witnesses for the State expressly disclaim any knowledge that he did have. In view of the absence of such connection by the prisoner, it is impossible to see how the proof of these collateral crimes could illustrate the prisoner's purpose and intent in making the threats. There is no question of a general scheme upon the part of the prisoner to terrorize or intimidate the negroes of that community, and, as stated, no claim that he had connection with such scheme upon the part of others. In addition, the note itself, from the language employed, precludes any possible discussion or dispute as to the intent with which it was written. It was held in *Price* v. *Clapp*, 119 Tenn., 430, 105 S. W., 864, 123 Am. St. Rep., 730, that, where there could be no doubt of the intent or purpose with which the letter was written, evidence of collateral crimes committed by the person on trial could not be received to show intent. It should be observed that, in all of the cases in which evidence of collateral crimes has been admitted, the testimony tended to show that the person accused and upon trial was the author of the collateral crimes. In this case it is not claimed that the prisoner was the author of the collateral crimes, or that he had any connection with them directly or indirectly. We think it clear, therefore, that the admission of this evidence was incompetent. This testimony opened up to the consideration of the jury the general condition of hostility existing between the races in the community where the

prisoner and the prosecutor live, and we think that, in view of the closeness of the evidence, it must have injuriously affected the rights of the prisoner.

For this error, the judgment of the criminal court is reversed, and the case remanded for a new trial.