MYRON JOHNSON and GEORGE P. ATKINS

*v.*

STATE OF TENNESSEE.

(*Nashville,* December Term, 1960.)

Opinion filed April 5, 1961.

GUENTHER & TUCKER, Memphis, for plaintiff in error.

THOMAS E. FOX, Assistant Attorney General, for the State.

312

MR. JUSTICE BURNETT delivered the opinion of the Court.

The plaintiffs in error were convicted of forging a check and sentenced to serve not more than five years in the State penitentiary. From this conviction appeals have been seasonably perfected, briefs filed and arguments heard. We now, after a rather considerable independent investigation, have the matter for disposition.

Our statute defining forgery is found in Section 39-1701, T.C.A., and reads thus:

"Forgery is the fraudulent making or alteration of any writing to the prejudice of another's rights."

The factual situation out of which this indictment and conviction grew presents a state of facts not found by us in any other case covered by the various annotations on the subject as contained in 41 A.L.R. 229; 46 A.L.R. 1529; 51 A.L.R. 568; and 49 A.L.R.2d 853. We have read many of these cases in addition to all the notes there cited.

The facts are that the defendant, Atkins, wrote a check, and a number of others, too, payable to a fictitious per-

son. He signed this check in the name of a firm by C. M. Goodwin. Goodwin authorized Atkins to sign his name to the checks as was done by Atkins. Goodwin had formerly been a bookkeeper for Atkins and was the owner of this firm and had a bank account in that name. Prior to the issuance of the checks offered under this prosecution, the bank account had been depleted to such an extent that there was apparently no money therein. The checks thus written by Atkins were given by Atkins to a colored man, who worked as a janitor or other such work for Atkins. The colored man in turn took the primary check upon which this conviction is based to a furniture store in Memphis and bought certain furniture and gave the check to the furniture store and endorsed on the back of the check the name of the payee appearing on the check. He was then given money for a portion of the check, the other part applying to the goods he had purchased. The payee of the check was not the person who signed the check, but was a fictitious name which Johnson, the colored man, signed thereto. Under this record there is evidence that there were numerous checks thus made and different aliases given for the payee, which when Johnson cashed the check he signed these different aliases to it, but did not give his, Johnson's correct name.

On the primary check on which this conviction is had Johnson got part of the money for this check and told the party that he would come back the next day or soon thereafter to get the goods, and when he did come back he said his wife wanted to trade them for some other kind and he wanted to get some more. Meantime the holder of the check, the storekeeper to whom the check had been negotiated, became suspicious and had notified the police department. When Johnson who signed an alias as payee

of the check came back on the following day, or whenever it was soon thereafter, the officers were called and upon making an arrest of Johnson found that his true name was not that as signed on the back of the check, but from papers in his car which he took them to they found what his name was. Then as a result of finding this and talking to Johnson they secured a search warrant and went to the home of Atkins and there found in a drawer in Atkins' house under some shirts and other things a check book upon which these checks were written as above described. Atkins denied forging the check, but admitted to the officers that he had signed Goodwin's name to the check. The officers assumed that when another person's name was signed to the check that this constituted forgery and it is the argument of the State herein that by the officers saying that this was a forgery that that constitutes evidence of such. We do not think so. The statement made by Atkins to these officers was no more than an admission that he had signed the name of Goodwin to the check. Whether or not this signing of Goodwin's name to the check was a forgery depended upon whether or not he had authority to sign the name to the check. Both Goodwin and Atkins testified at the trial that he did have the authority to sign such a name. This being true, the signing of the name of Goodwin to the check would not, and does not, constitute a forgery.

We think, though, that in view of the wording of our statute, as above quoted, that a man could under it be guilty of forgery in making this writing even though he signed his own name thereto. Such was held by this Court in *Luttrell v. State,* 85 Tenn. 232, 1 S.W. 886, 4 Am.St.Rep. 760.

When we come to consider the facts of this case, it is perfectly apparent that, and this is practically what was admitted by Atkins in his testimony as well as the testimony of Goodwin, they had this arrangement between themselves where Atkins would draw checks, sign Goodwin's name thereto, as a means to get money to operate his, Atkins' business. The record shows that on other occasions, prior to this, when Atkins was notified about it, he would in some way find the money to make these checks good. Apparently it was his thought that the only crime, or thing that he had done wrong as far as being subject to the criminal laws of this State was a violation of our cold check statute (Section 39-1904, T. C.A.), and that he would have to be given notice and different things required by the statute and authorities annotated thereunder, and thus when he would make the check good he was not subject to criminal responsibility. We think though in view of the conspiracy, as that is what it amounts to as shown herein, between these three parties, Atkins drew these checks and drew them on a named firm that had had an account in the bank and made them payable to a fictitious person and these checks were always then cashed by this colored fellow, Johnson, and Johnson signed the fictitious payee's name on the check, but never giving his own name, and Johnson would divide the money received with Atkins, thus clearly was shown the criminal intent to deceive and defraud herein.

What we have just said is substantiated in 4 Bacons Abr., 353, under the title of "Forgery", when it is said:

"The notion of forgery doth not so much consist in the counterfeiting of a man's hand and seal,—but in the endeavouring to give an appearance of truth to a mere deceit and falsity; and either to impose that upon

the world as a solemn act of another, which he is in no way privy, or at least to make a man's own act appear to have been done at a time when it was not done, and by force of such a falsity to give it an operation which in truth and justice it ought not to have.''

In Bishop on Criminal Law, Vol. 2, 9th Ed., Section 584, it is said:

''* * * 'an offender may be guilty of a false making of an instrument although he sign and execute it in his own name, in case it be false in any material part, and calculated to induce another to give credit to it as genuine and authentic, when it is false and deceptive.' ''

''The broad doctrine is not maintainable that a man cannot commit forgery of an instrument executed by himself.'' Section 585(3), 2 Bishop on Criminal Law, 9th Ed.

''Ordinarily there are two persons who legally may be defrauded,—the one whose name is forged, and the one to whom the forged instrument is passed; therefore the indictment may lay the intent to be to defraud either, and it will be sustained by proof of an intent to pass as good, though there is shown no intent in fact to defraud the particular person.'' Section 598(4), 2 Bishop on Criminal Law, 9th Ed.

One reading the Luttrell case, supra, can see the reasoning that this Court used there in applying these principles and holding that one can be guilty of forgery when even he signs his own name.

It is said by the annotator of the note in 49 A.L.R.2d at page 856, that:

"It is the settled rule that forgery may be committed by executing, or procuring to be executed, a written instrument in a fictitious or assumed name with the intent to defraud, and this rule obtains even though the statute under which the prosecution is brought contains no specific provision as to the use of fictitious or assumed names."

Under this statement the annotator cites several of our cases as well as cases from many other jurisdictions. Thus is is that we conclude when Atkins made these checks out in a fictitious name and Johnson then signed these fictitious names and procured the money therefor that through the concert of the two they are guilty of forgery under the wording of our forgery statute above quoted.

 There was evidence offered in this case of numerous other similar offenses to that here committed. Under our authorities on this type of case, it is prefectly proper to admit such evidence to show a scheme or design on the part of the plaintiffs in error, and such a showing does not constitute error. *Mays v. State,* 145 Tenn. 118, 238 S.W. 1096; *Wrather v. State,* 179 Tenn. 666, 169 S.W. 2d 854.

 During the course of the trial, and in the absence of the jury, the trial judge instructed the District Attorney General before introducing evidence of similar offenses he should first prove the principal offense. This was entirely proper and it is not in the least prejudicial. It was merely an instruction as to how an orderly trial should proceed before the introduction of these other outside offenses. There is no error therein.

In the argument of the District Attorney General (the argument of both the District Attorney General and the defense counsel is in the record) he argued to the jury that the acts of the witness, Goodwin, whose name was signed to the checks and who testified on behalf of Atkins, were criminal. Exception was taken to this argument and the trial judge overruled the exception. We think that under the facts of this case as hereinbefore detailed that there was certainly a justifiable inference which justified the District Attorney General in making such an argument. This scheme seemed to have been, and was clearly inferable, a scheme between these three parties, Atkins, Johnson and Goodwin, to get money in this way on checks when there was no money in the bank. We think that there is no error here under the authority of *Henderson v. United States, 6* Cir., 218 F.2d 14, which is annotated in 50 A.L.R.2d 754.

This has been an extremely interesting case to us, and as said in the outset we have done considerable investigation thereon because of the rather unusual facts. But after having done so, we are satisfied with the verdict due to the wording of our statute, which is slightly different from many other statutes which use the words "falsely made", while our statute does not use such words, and it seems to us that this being true and under a factual situation as here presented and the wording of our statute as it is that the conviction is maintainable. We have very carefully read this entire record and find no error therein. As a result the judgment below must be affirmed.