MINNIE LEE WEBSTER, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Nov. 27, 1967.

Certiorari Denied April 1, 1968.

2

Seymour S. Fosenberg, Memphis, Tenn., for plaintiff in error.

George F. McCanless, Atty. Gen. of Tennessee, Thomas E. Fox, Asst. Atty. Gen., Nashville, Tenn., for defendant in error.

## OPINION

OLIVER, Judge.

Plaintiff in error, referred to herein as defendant, was convicted by a jury upon an indictment predicated upon T.C.A. § 39-301, in which she was charged with unlawfully and feloniously performing an abortion upon Kathryn Clayborn. The jury fixed her punishment at not more than one and one-half years in the penitentiary. The trial judge approved the verdict and entered judgment accordingly. That statute is as follows:

> "39-301. Criminal abortion—Penalty.—Every person who shall administer to any woman pregnant with child, whether such child be quick or not, any medicine, drug, or substance whatever, or shall use or employ any instrument, or other means whatever, with intent to destroy such child; and shall thereby destroy such child before its birth, unless the same shall have been done with a view to preserve the life of the mother, shall be punished by imprisonment in the penitentiary not less than one (1) nor more than five (5) years."

4

In this Court, upon an appeal in the nature of a writ of error, the defendant seeks reversal of the conviction and a new trial upon three Assignments of Error, the effect of which is (1) that the evidence preponderates against the verdict and in favor of her innocence, and (2) that it was prejudicial error to admit evidence of other alleged abortions by the defendant.

At the time of trial, February 20, 1967, Kathryn Clayborn was 20 years of age. She is the unmarried mother of two children, ages two and three years. In February 1966, while employed as a member of the Neighborhood Youth Corps, she became pregnant. She confided in and sought the help of her friend Bobbie Jean Crawford, whom she had known about three years, who was also a member of the Neighborhood Youth Corps, unmarried and had one child, and who thereupon made an appointment for Kathryn Clayborn with the defendant and accompanied her to the defendant's beauty shop on Tillman Street in Memphis, in March of 1966. Kathryn Clayborn had not met the defendant prior to that time. The defendant took these two girls into a back room and asked Kathryn if she had the "tool" with her, whereupon Kathryn gave her a rubber catheter tube which she had brought along. Having had Kathryn to remove her underclothing and lie down on a couch, the defendant then used a speculum to open Kathryn's vagina and inserted the rubber catheter tube. When this procedure was completed, "she told me I could get up and put my things back on and I paid her and left." Kathryn gave the defendant $5 when they first entered the beauty shop, when a friend of the defendant came in and wanted some money and she

didn't have any "change" and asked Kathryn and Bobbie if either of them had "a five." She gave her $20 when the operation was completed, making a total of $25 paid to the defendant. She went to the defendant because she was pregnant and wanted to get rid of the child. Bobbie Jean Crawford was present during the entire procedure and the two girls left the beauty shop together.

The following afternoon Kathryn began to experience difficulty, went home from work about 12:00 or 1:00 p.m., removed a catheter tube from her body and about 3:00 or 4:00 o'clock that afternoon "I had to go to the restroom and when I went in I felt something pass from my body but I guess it was a clot of blood or something, but what it was I don't know because I didn't look at it." It was a solid object and she flushed it down the commode. Thereafter she was sick for three days, "I couldn't walk or lie down or eat or anything. I stayed at home about three days off work." Her pains and discomfort continued and she consulted Dr. T. Kyle Creson, Jr. on March 28, 1966, who found upon examination that "there was tenderness in the right lower abdomen where she described her discomfort and on pelvic examination there was a yellow discharge and a tender mass in the right adnexa, that's in the right tube area, low down in the abdomen, pelvis." The doctor administered medication and she recovered completely without further difficulty or complication. The doctor testified that the condition he found could have been caused by insertion of a catheter tube into her vagina, and that it also could have been caused by a number of other things.

The defendant is thirty four years of age. Her husband deserted her several years ago, and since then she has had the entire responsibility of supporting her five children ranging in age from six to eighteen years. Entering a plea of not guilty, she flatly denied that she performed any abortion on Kathryn Clayborn and testified that she never performed an abortion upon any person at any time. She testified that she did not even know any of the girls who had testified she performed abortions upon them except Bobbie Jean Crawford and that she was in the beauty shop for a hair cut "a long time ago" and later came there another time with a policewoman about the time or shortly prior to the time the defendant was charged with this offense; that Bobbie Jean Crawford called her with regard to a permanent and was told to bring a small permanent kit because the defendant was unable to get these supplies herself at that time and had only a very small amount on hand, because of credit problems brought about by a difficulty concerning an account; and that if she said anything to Bobbie Jean about a catheter tube she doesn't remember it; "she didn't lead me to believe nothing about no catheter, Sir, she led me to believe and I was under impression it was a permanent kit that she was concerned cause I told her, I told numbers to take and pick them up because I couldn't get them myself." The defendant's position and insistences during the trial were that all of these girls who testified for the State that she performed abortions upon them must have mistaken someone else for her ("I been told a lot of times that I feature quite a few people"); or that they were trying to shield and cover up for someone else as the guilty party. (Tr. pp. 62-64)

When Bobbie Jean Crawford was called as a witness for the State, defense counsel asked the Court to excuse the jury, and in their absence objected to any testimony by this witness upon the ground that the defendant was charged in a separate indictment with performing an abortion upon her in 1965, the contention of defense counsel being that this would lead to testimony by this witness with respect to another offense of a similar kind committed by the defendant. The Court ruled that it was competent for the State to show "one hundred abortions," if not too remote in point of time, for the purpose of showing that the defendant intended to commit an abortion in this particular case: "They can't use it to go to other than that purpose—to show system, scheme and device, guilty knowledge or intent, or identification in some cases, but this case doesn't have any identification problem involved."

At the conclusion of the direct examination of Bobbie Jean Crawford, the Court instructed the jury as follows: "If any evidence has been introduced in this case tending to show the commission by the defendant of similar offenses to that charged in the indictment as the case on trial, the jury may consider such evidence along with all the evidence in the case for the purpose of determining the motive and intent of the defendant whether or not the defendant had guilty knowledge of said acts, scheme or operation, whether or not the act charged in the indictment if proven, were not accidents or mistake, or were or were not parts of a plan, scheme, or system. It must always be kept in mind by the jury that the defendant is being tried on the charge in the indictment and that alone. You understand gentlemen?

That charge alone that is charged with, in the indictment."

Over the objection of defense counsel, Bobbie Jean Crawford testified that the defendant performed an abortion upon her in September 1965; that she took a catheter tube with her, and that the defendant followed the same procedure in her case as she did with Kathryn Clayborn; that she later removed her catheter tube, and that her abortion was successful and uneventful; that she met the defendant through a friend, Vivian Owens, who accompanied her to the defendant's beauty shop when her abortion was performed; that during 1966, subsequent to Kathryn Clayborn's abortion, she took Betty Jones and Robbie Calhoun and Ethel Mae James to the defendant for abortions; that she was with Betty Jones throughout the procedure and that the defendant followed exactly the same methods which she had employed with Kathryn Clayborn and herself; and that all of these girls had been members of the Neighborhood Youth Corps and all had attended Booker T. Washington High School together. No one knew the whereabouts of Robbie Calhoun and Ethel Mae James; an officer armed with a subpoena for Ethel Mae could not find her.

Betty Jones, called as a witness for the State testified over defense objection that she was 19 years old, finished Booker T. Washington High School in May of 1965; that she is taking nursing training, has never been married and has one child three years old; that she became pregnant in February 1966, and told Bobbie Jean Crawford about it; that Bobbie Jean told her she could help her and took her to the defendant's beauty shop in

March of 1966; that the defendant conducted her and Bobbie Jean to the back room, had her remove her underclothing, and carried out exactly the same procedures with speculum and catheter tube; that for this operation she paid the defendant $25; that she aborted within twenty-four hours, without any ill effects; and that she did not know the defendant before that occasion and has had no contact with her since.

We consider first the Assignments that it was prejudicial error to admit evidence that the defendant performed abortions other than the one charged in the indictment. We are of opinion that the question directly in issue in this case is not intent or guilty knowledge. The facts here do not suggest or support that hypothesis, nor admit of that construction. This is not a case of confession and avoidance, not one of admission of the act and attempt to avoid criminal liability upon the ground of justification, innocent or lawful purpose, or mistake or accident. Instead, the circumstances reflected by the proof show unquestionably and without contradiction that abortions were in fact performed upon Kathryn Clayborn, Bobbie Jean Crawford and Betty Jones, and that beyond any doubt whatever each was done with the unlawful intent proscribed by the statute.

In our view, then the question squarely and directly presented as the presiding and determinative issue in this record, especially by the defendant's own insistences detailed above, is one of identity, the identity of the defendant as the person who performed the abortion for which she was on trial.

Our Supreme Court has dealt many times, in a great

variety of factual contexts in criminal cases, with the question of the admissibility of evidence of crimes committed by the accused other than the one for which he is on trial. It would extend this opinion unduly to undertake a discussion of all of those cases. Reference to only a few will elucidate the question confronting us and point the way to its proper resolution.

Thompson v. State, 171 Tenn. 156, 101 S.W.2d 467, was an arson case. The defendants complained about admission of evidence that Thompson had participated in other similar transactions in which secondhand furniture had been bought and placed in a house soon thereafter destroyed by fire. The purpose of that evidence was to demonstrate intent and guilty knowledge. The Court's opinion affirming the conviction is in part as follows:

"But we think there can be no possible doubt that it was competent for the State to make the proof complained of, supporting the theory of the State that Thompson had guilty knowledge and intent in connection with the particular transaction for which he was being tried. If it could be shown that in other cases he had participated in the purchase of secondhand furniture and in the procuring of over insurance and in the division of the spoils, it would clearly throw light upon the meaning of his conduct in the instant case and demonstrate that he was not acting innocently, but in line with a fraudulent course of conduct. Woodruff v. State, supra, 164 Tenn. 530, 51 S.W.2d 843, discusses this question and cites and quotes from the leading case of Defrese v. State, 50 Tenn. ( Heisk.) 53, 8 Am.Rep. 1, and Mays v.

State, 145 Tenn. 118, 238 S.W. 1096. Moreover, upon an examination of this whole record, we are not of opinion that the evidence offered by the State of this character was in any sense determinative, or, indeed, really affected the result. We are satisfied that conviction would have followed without the introduction of this evidence.

"In addition to the expressions in our own cases, above cited, we quote and approve the following statement of the rule from Wharton's Criminal Evidence, vol. 1, pp. 527-530:

" 'Sec. 352. To show plan, scheme, or system. Evidence of other crimes may be admitted when it tends to establish a common scheme or plan embracing the commission of a series of crimes so related to each other that proof of one tends to prove the other, and to show the defendant's guilt of the crime charged. Subsequent as well as prior collateral offenses can be put in evidence, and from such system, identity or intent can often be shown. The question is one of induction, and the larger the number of consistent facts, the more complete the induction is. The time of the collateral facts is immaterial, provided they are close enough together to indicate that they are a part of the system. A man may be honestly mistaken and have no fraudulent intent if a transaction stands alone, but the probabilities of an honest mistake diminish as the number of similar transactions, indicating a scheme or system, increases. * * *' "

In Warren v. State, 178 Tenn. 157, 156 S.W.2d 416, the defendant, convicted of robbery, complained on ap-

peal that evidence that he had robbed other parties was erroneously admitted. Affirming, the Court said:

"By other assignments counsel challenge the admissibility of the evidence to which reference has been made, given by the parties who were robbed by defendant on a different occasion, upon the ground that this evidence prejudiced the defendant's case by tending to establish his commission of an independent and separate crime. We think the trial judge committed no error in admitting this testimony. In Woodruff et al. v. State, 164 Tenn. 539, 540, 51 S.W.2d 843, 845, Mr. Justice Swiggart, in the course of his opinion, makes the following general observation on this subject, applicable here:

" 'Evidence material to the issue under investigation in a criminal case is never rendered incompetent because it tends to show that the accused has committed other crimes. It is competent or incompetent according to whether it is relevant to the issue on trial and has probative value. If incompetent by that test, its tendency to show guilt of another offense may cause it to be prejudical to the accused and therefore ground for reversal. But evidence competent because relevant is not rendered inadmissible merely because it is prejudicial to the accused. This is the rule to be deduced from the leading case of Defrese v. State, 50 Tenn. (3 Heisk.) 53, 8 Am.Rep. 1, long recognized as authority, wherein the court said: "It may be safely assumed that whatever tends to explain or elucidate the charge in question, or to demonstrate the guilty connection of the parties therein, may be given

in evidence though it may be a ground of another and distinct accusation." '

"The attorney-general in his brief in this Court concedes that as a general proposition evidence of other crimes is inadmissible, but relies upon a well recognized exception applicable where, as in the instant case, the only question at issue is the identity of the party committing the crime for which the accused is on trial. He submits that in cases of this kind such evidence is admissible and quotes the following from a leading law text book authority, 20 Am.Jur. 292, 293:

" 'The general rule that evidence of separate and independent crimes is inadmissible to prove the guilt of a person upon trial for a criminal offense is subject to a well-defined exception with respect to proof of the identity of the accused. The broad rule is that where evidence tends to aid in identifying the accused as the person who committed the particular crime under investigation, it is admissible, in spite of the fact that it tends to show that the accused is guilty of other crimes for which he is not on trial. This rule is applied in a wide variety of cases, such as arson, burglary, homicide, larceny, liquor law violations, robbery, and many other instances. It is permissible, in those instances where evidence is admitted of the commission of another similar crime for the purpose of showing identity, for the accused to introduce in evidence the record of a court showing his trial and acquittal of such other crime.

" 'It is clear, however, that proof of the commission of

another crime is not properly admitted simply for the purpose of identifying the defendant unless it is absolutely necessary to establish identification as an element of the crime. Generally speaking, it is only where the identity of the accused is not definitely connected with the offense on trial that other offenses may be introduced to connect and identify him with the case on trial. If the identity of the accused is established by other evidence and is therefore no longer an issue, it is improper to admit evidence of other crimes on the theory of proving identity. It is necessary also for such evidence to be admissible that there be such a logical connection between the crime that proof of one will naturally tend to show that the accused is the person who committed the other. However, where the sole issue is the identity of the accused, the evidence on that question by the state may properly be permitted to cover a wide range, and in a measure the rigid rules of evidence will be relaxed.'

" 'We find this text supported by citation of a very large number of cases from various jurisdictions. We also find annotations in 3 A.L.R. 1540, 22 A.L.R. 1016, 27 A.L.R. 357, and 63 A.L.R. 602, to the same effect. In introducing a discussion of the subject of the 'admissibility of evidence of other offenses in criminal prosecution to prove identity of defendant,' the annotator in A.L.R. 1540, says:

" 'To the general rule that evidence of separate and independent crimes is inadmissible to prove the guilt of a person on trial for a criminal offense there are several exceptions, which are as uniformly accepted by the courts as the rule itself. Among these excep-

tions is that, where evidence tends to aid in identifying the accused as the person who committed the particular crime under investigation, it is admissible, in spite of the fact that it tends to show the guilt of the accused of other crimes for which he is not on trial.' "The annotator in 27 A.L.R. 358, introducing a supplementary annotation on the same subject, thus comments:

" 'The recent cases sustain the general rule stated in the original note in 3 A.L.R., 1540, and reiterated in the note in 22 A.L.R. 1016, that evidence of an independent and separate crime, while inadmissible to prove the guilt of one on trial for a criminal offense, is admissible where such evidence tends to aid in identifying the accused as the person who committed the particular crime under investigation, although such evidence may also tend to show the guilt of the accused.' "

Harris v. State, 189 Tenn. 635, 227 S.W.2d 8, was a rape case. The issue directly involved was the identity of the defendant as the one who committed the crime charged. A witness was permitted to testify that she also was raped by the defendant about a week before he was alleged to have raped the prosecutrix. The Court reversed in an opinion as follows:

"This court has frequently discussed the rule that evidence relevant to the issue in a criminal case is admissible notwithstanding the fact that it shows the defendant guilty of a crime for which he is not on trial. Another way of stating the proposition is to begin with the rule that proof of a crime other than

that alleged in the indictment, is not admissible against a defendant unless it tends directly to prove him guilty of the offense for which he is on trial, and then proceed to consider the exceptional circumstances which may render such proof directly relevant.

"The first approach is exemplified by the opinion of Justice Swiggart in the case of Woodruff v. State, 164 Tenn. 530, 51 S.W.2d 843, and the second by the opinion of Justice Hall in the case of Mays v. State, 145 Tenn. 118, 238 S.W. 1096. But however viewed we at last reach this result, that to render relevant evidence of a crime for which a defendant is not being tried, its purpose and effect must be to show something more than the fact that the defendant is the kind of person who would not scruple to commit the kind of offense for which he is on trial. Vicious instincts are too common and the probability of prejudice too great to justify us in according probative force to the mere fact that a defendant, prior or subsequent to the offense under investigation, has been guilty of a like crime. Boyd v. U.S., 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077; People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193, Annotations 70 A.L.R. 910; 63 A.L.R. 602; 27 A.L.R. 51; 3 A.L.R. 1537.

"Many cases in the Tennessee Reports discuss this principle of evidence and its application, and it is, of course, upon its application that difficulties are sometimes met, because crimes differ so widely in their factual aspects that closely fitting precedents are not always available. Miller v. State [189 Tenn. 281, 225 S.W.2d 62, 15 A.L.R.2d 1076]; Turner v. State, 187

Tenn. 309, 213 S.W.2d 281; Wrather v. State, 179 Tenn. 666, 169 S.W.2d 854; Waller v. State, 178 Tenn. 509, 160 S.W.2d 404; Warren v. State, 178 Tenn. 157, 156 S.W.2d 416; Thompson v. State, 171 Tenn. 156, 101 S.W.2d 467; Woodruff et al. v. State, 164 Tenn. 530, 51 S.W.2d 843; Mays v. State, 145 Tenn. 118, 238 S.W. 1096; Vinson v. State, 140 Tenn. 70, 71, 203 S.W. 338; Parrish v. State, 129 Tenn. 273, 164 S.W. 1174; Gardner v. State, 121 Tenn. 684, 120 S.W. 816; Holder v. State, 119 Tenn. 178, 104 S.W. 225; Sykes v. State, 112 Tenn. 572, 82 S.W. 185, 105 Am.St.Rep. 972; Clapp v. State, 94 Tenn. 186, 30 S.W. 214; Rafferty v. State, 91 Tenn. 655, 16 S.W. 728; Foute v. State, 83 Tenn. 712; Links v. State, 81 Tenn. 701; Murphy v. State, 77 Tenn. 373; State v. Poe, 76 Tenn. 647; McAdams v. State, 76 Tenn. 456; Sartin v. State, 75 Tenn. 679; Dobson v. State, 73 Tenn. 271; Hall v. State, 71 Tenn. 552; State v. Becton, 66 Tenn. 138; Logston v. State, 50 Tenn. 414; Wilcox v. State, 50 Tenn. 110; Defrese v. State, 50 Tenn. 53, 8 Am.Rep. 1; Wiley & Massey v. State, 43 Tenn. 362; Hudson v. State, 43 Tenn. 355; Britt v. State, 28 Tenn. 31; Williams v. State, 27 Tenn. 585, 593; Kinchelow v. State, 24 Tenn. 9; Powers v. State, 23 Tenn. 274; Peek v. State, 21 Tenn. 78.

"No objection can be raised to admitting proof of independent crimes when such proof is necessary to establish identity. Warren v. State, supra; Mays v. State, supra; 20 Am.Jur., Sec. 312, pp. 292-293; 22 C.J.S., Criminal Law, § 684, p. 1097. And this is true whether the proof of independent crime is inci-

dental to the establishment of identity (Sartin v. State, supra; State v. Becton, supra) or is the basis thereof. Warren v. State, supra.

"Sometimes to establish identity it becomes relevant to show similarity of the plan or method by which more than one crime has been accomplished. Such instances should be carefully distinguished from those in which evidence of plan or method is offered to establish guilty knowledge or to negative the likelihood of fortuity, for the tests of direct relevancy are by no means the same.

"For example, in Warren v. State, 178 Tenn. 157, 156 S.W.2d 416, the plan or method of two crimes was admissible to establish identity, while in Thompson v. State, 171 Tenn. 156, 101 S.W.2d 467, the evidence of plan or method was admissible to indicate guilty purpose and to render improbable the possibility that a building had been burned by accident. Although proof of the plan or method pursued in the commission of independent crimes became directly relevant in both instances, it did not become relevant for the same purpose, wherefore the criteria by which its relevancy was determined were not the same.

"In the Warren case it was necessary to show a peculiarity of the plan or method pursued in the commission of the independent crime because only by its unusual aspect could the existence of a plan or method establish identity, while in the Thompson case evidence of the plan or method pursued needed to prove no more than that the defendant had schemed to burn houses, and any plan or method of accom-

plishment, whether unique or unusual, would be relevant to indicate guilty purpose in the instance under investigation.

"In the present case evidence of the rape for which the defendant was not on trial could be accepted, if at all, to identify him as the person who committed the rape alleged in the indictment, for of course there was no room for a question of guilty knowledge or accident. In such a case the proof depended on to show that the two crimes were committed by the same person must establish some peculiarity of plan or method common to the two offenses, otherwise evidence showing the defendant guilty of the collateral crime could do no more than indicate an evil propensity. Such propensity is not considered relevant to identity and the probable prejudicial effect of such evidence lies at the root of the rule excluding it Boyd v. U. S., supra; 20 Am.Jur. (Evidence), Sec. 316. Accordingly, the fact that a defendant has raped one woman has been held inadmissible as proof that he has raped another. Walker v. State, 23 Ariz. 59, 201 P. 398; State v. Putney, 110 Or. 634, 224 P. 279; Bridewell v. State, 134 Tex.Cr. 77, 114 S.W.2d 259.

"It may be, however, that a particular strategem or method has such unusual particularities that reasonable men can consider that it would not likely be employed by different persons. Wrather v. State, supra. Many men commit murder, but Jack the Ripper used his knife in a manner so peculiar that when his crimes were viewed together there could be little doubt that they were committed by the same man. Merely the fact, however, that a series of such

crimes may be committed with a knife will not render them unusual enough to identify the perpetrator of one as the perpetrator of the others. Sometimes to establish the identity of a sexual pervert, evidence of an unusual perversion has been received, but this is no more than the application of a corollary of the rule above stated, that a defendant's methods in the commission of a crime may be sufficiently unusual to amount to a signature. Barnett v. State, 104 Ohio St. 298, 135 N.E. 647, 27 A.L.R. 351.

"This court has said that where the sole question is the identity of the accused, the State may properly be permitted to cover a wide range in seeking proof of other crimes which cannot be reasonably believed to have been committed except by the same criminal who committed the offense under investigation, and thereby establish the identity of the person responsible. Warren v. State, supra.

"Thus we are brought to the point of considering, in the present case, whether the similarity of the two crimes, which separate witnesses testified the defendant had committed, were so similar in their circumstances as to warrant the reception of proof of one as relevant to prove the other. In this case the crimes were a week apart in time. They were both rapes and both were committed by coercion. In each instance the witness thought that a knife had been used although neither was able to say that she had seen the knife. The two crimes were not committed at the same place. The methods pursued were not so peculiar as to render it unlikely that lustful men bent upon the crime of rape might not have pursued iden-

tical methods. There was, on the other hand, some lack of similarity in the manner in which criminal lust manifested itself in the two instances, in that one of them involved a perversion.

"Since the whole case turns upon the identity, the rule under which proof of similar crimes is admitted should not be too narrowly construed, but the trouble here is that even under a liberal construction the fact that the defendant committed one of the crimes sheds little light on the question of whether he committed the other.

"The trial judge, in overruling the objection to the admission of proof of an independent crime referred to the facts set forth in the case of Warren v. State, supra, the circumstances of which case he remembered. His Honor was correct in his judgment that there was an analogy between that case and the present one. The *Warren* case, however, marks a limit beyond which this court has not gone in permitting the proof of an independent crime for the purpose of identification, and it would considerably extend the application of the rule there employed to apply it in the present case.

"The *Warren* case involved robbery and the incident held to be admissible to establish identity was another robbery, a few night later, at the same locality and at the same time of night, where a car was approached and held up by a man 'dressed in black cap and overalls with his face smeared with dark grease or paint, carrying a pistol in one hand and a flash light in the other.' [178 Tenn. 157, 156 S.W.2d 417] It is prob-

able that the black paint or grease smeared over his face was considered such an unusual thing that this, in connection with the other circumstances, warranted the admission of identifying evidence to justify a conclusion that the man who committed one crime was the man guilty of the other.

"The two cases are somewhat similar but certainly the proof in the *Warren* case gave more ground for an inference that the crimes were committed by the same person. In the present case a jury would not have been warranted in this conclusion by the circumstances of the two crimes, but only by the assertion of the witness as to the actual identity. Since the *Warren* case still marks the boundaries beyond which this court has not been willing to go in permitting the admission of evidence of one crime to establish the identity of a defendant accused of committing another, we are constrained to hold that the circumstances in the present case, since they take us beyond this established boundary, are such as to warrant reversal."

The case of Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, was one in which the defendants were convicted of receiving and concealing stolen men's suits, property of Levy Brothers in Nashville. A search of a car in a parking lot (for which one of the defendants had a claim check) disclosed suits stolen from a Memphis store operated by one Daniels, according to his testimony. Rejecting the defendants' contention on appeal that admitting Mr. Daniels' testimony violated the rule prohibiting proof of other crimes, the Court, in an opinion by Mr. Chief Justice Burnett, said this:

"In 20 Am.Jur., page 287, Sec. 309, Evidence, the following very sound and general rule is thus stated:

" 'A person, when placed upon trial for the commission of an offense against the criminal laws, is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the indictment against him. It is a well-established common-law rule that in criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless the other offenses are connected with the offense for which he is on trial.'

"This rule has many well recognized exceptions as is said by the annotator of 125 A.L.R., at page 1036:

" 'Thus, evidence of other crimes may be admissible for purposes of identifying the defendant, or for establishing a mental state, such as guilty knowledge, motive, or intent on the part of the defendant, or for establishing a common scheme or plan for the commission of several crimes so related to each other that proof of one tends to establish the others.'

"Among the many exceptions to this rule are several Tennessee cases involving different states of fact. The case of Sykes v. State, 112 Tenn. 572, 82 S.W. 185, 105 AM.St.Rep. 972, is our first case which holds that other acts of sexual intercourse might be shown. There have been many such cases since. In this re-

ported case numerous cases from various jurisdictions are taken up. Since that time we have had many cases in this State where other crimes were shown which come within the quotation from the annotation in A.L.R. above quoted. Some of our cases are Rafferty v. State, 91 Tenn. 655, 16 S.W. 728; Mays v. State, 145 Tenn. 118, 238 S.W. 1096, and Thompson v. State, 171 Tenn. 156, 101 S.W.2d 467. The Rafferty case is a case where many fires had been had as is the Thompson case where the man was convicted of arson. We have likewise the authority of Wharton on Criminal Evidence, 12th Edition, Volume 1, at Section 240, under the title 'Plan, Scheme, or System', the exceptions are enumerated. It certainly seems to us that under these opinions and under the general exceptions of the land over that there is no error by admitting this evidence when it comes to the peculiar facts of this case. Here within a day or two these parties were caught running away from a store with the storekeeper following them with his suits (there is no denial that they were his suits and were turned over to him in the presence of the plaintiffs in error) and when these things were all feloniously obtained in this way and were all found together with the suit for which they were being tried for stealing or receiving in this particular case it seems to us that it was all an incident of this transaction and was subject to inquiry here for the reasons above expressed."

In Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523, the defendant was convicted of raping Mrs. Carroll. Mrs. Sneed who lived in the second apartment down

the hall from Mrs. Carroll, was permitted to testify that the defendant criminally assaulted her. On appeal the defendant assigned admission of this testimony as prejudicial error. The Court affirmed in an opinion by Mr. Justice Felts, wherein it is said:

"Defendant assigns error upon the admission of the testimony of Mrs. Edna Sneed 'as to the facts and things that went on in her apartment, wherein she alleged that the defendant made a criminal assault on her.' It is urged that this was evidence of other and independent crimes which did not elucidate or tend to prove defendant's guilt of the charge upon trial, and was, therefore, inadmissible and highly prejudicial to him.

"We have many cases in which we have discussed the question of the admissibility of evidence of other crimes than that for which the accused is on trial. We need not undertake to review them. Some of the more recent ones are: Sims v. State, 208 Tenn. 615, 348 S.W.2d 293; Jones v. State, 200 Tenn. 553, 292 S.W.2d 767; Harris v. State, 189 Tenn. 635, 227 S.W.2d 8; Woodruff v. State, 164 Tenn. 530, 51 S.W.2d 843; Mays v. State, 145 Tenn. 118, 238 S.W. 1096.

"The general principle to be collected from these, and other authorities, is that evidence of another crime or crimes, than that charged in the indictment and for which defendant is on trial, is not admissible unless such evidence is relevant to prove his guilt of that crime. The test of relevancy is furnished not by law, but by logic and general experience (Thayer,

Preliminary Treatise on Evidence (1898), 264-266). Morgan, Basic Problems of Evidence (1961), 183-194; Trautman, Logical or Legal Relevancy—A Conflict in Theory, 5 Vand.L.Rev. 385, 403-410.

"It is generally agreed that evidence of other crimes by defendant is not admissible merely to prove his disposition to commit such a crime as that on trial; but such evidence is admissible when it is relevant to prove some other material issue on trial; for instance, when it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of defendant on trial. Morgan, supra; Harris v. State, supra; Woodruff v. State, supra.

"The question of the admissibility of evidence of other crimes to prove defendant's guilt of the crime on trial underwent elaborate consideration in Mays v. State, supra. There the Court said:

" 'Evidence which is relevant to defendant's guilt is not inadmissible because it proves or tends to prove him guilty of another and distinct crime. It frequently happens that two distinct offenses are so inseparably connected that the proof of one necessarily involves proving the other, and in such a case on a prosecution for one evidence proving it cannot be excluded because it also proves the other. Evidence of another and distinct crime is admissible if it was committed as a part of the same transaction and forms part of the *res gestae.*

\* \* \* \* \* \*

" 'It is also admissible, where the crime charged is a part of a plan or system of criminal action, to offer evidence of other crimes near to it in time and of similar character, to show the knowledge and intent of the accused, and that the crime with which he is charged was not the result of accident or inadvertence.'

"We think the Trial Judge properly admitted in evidence the testimony of the witness Mrs. Sneed as to the circumstances of defendant's breaking and entering her apartment, his threats of her with the knife, his forcing her to engage in sexual perversion with him, his criminal assault on her with intent to force her to have sexual intercourse with him, and his arrest by the police in her apartment. These circumstances were admissible and relevant as tending to prove defendant's guilt of the crime specified in the indictment and for which he was on trial.

"As above stated, the State's proof was that defendant broke and entered Mrs. Carroll's apartment, assaulted and disabled her husband, threatened her with a knife, forced her to engage in sexual perversion with him, and then raped her; and that on leaving her apartment (621-D), passing one (621-E), he broke into the next one (621-F), apparently without leaving the premises, and by using the same pattern of procedure in both against each of the women assaulted.

"We think the facts detailed by Mrs. Sneed were so connected with those of the crime on trial as to be part of one and the same transaction, that both were

so related in time and circumstances that proof of one tended to elucidate and establish the other, and that upon this ground the testimony of Mrs. Sneed was admissible. Defrese v. State, 50 Tenn. 53; Woodruff v. State, supra; Jones v. State, supra; Sims v. State, supra."

Other cases, most of which are cited in the foregoing opinions, in which our Supreme Court has confronted the same question are: Sykes v. State, 112 Tenn. 572, 82 S.W. 185, involving an age of consent violation; Mays v. State, 145 Tenn. 118, 238 S.W. 1096, murder; Wrather v. State, 179 Tenn. 666, 169 S.W.2d 854, murder; Turner et al. v. State, 187 Tenn. 309, 213 S.W.2d 281, rape; Miller v. State, 189 Tenn. 281, 225 S.W.2d 62, 15 A.L.R.2d 1076, attempt to procure abortion; Hicks v. State, 191 Tenn. 214, 232 S.W.2d 39, subornation of perjury; Roberts v. State, 191 Tenn. 602, 235 S.W.2d 595, larceny; Johnson v. State, 208 Tenn. 311, 345 S.W.2d 883, forgery; Aymett v. State, 203 Tenn. 260, 310 S.W.2d 460, conspiracy to commit usury.

A very comprehensive treatment of this question is given in 20 Am.Jur., Evidence, Sections 309-318. In Section 309, pages 287-288, it is said:

"A person, when placed upon trial for the commission of an offense against the criminal laws, is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the indictment against him. It is a well-established common-law rule that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the

commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless the other offenses are connected with the offense for which he is on trial. In other words, it is not competent to prove that the defendant committed other crimes of a like nature for the purpose of showing that he would be likely to commit the crime charged in the indictment, for ordinarily such proof will not reflect any light upon the special crime with which the defendant stands charged. The principle is applicable to evidence of attempts to commit crimes and statements of intention to commit them. This general rule that a person who is on trial charged with a particular crime may not be shown to be guilty thereof by evidence showing that he has committed other crimes is said to be one of the distinguishing features of our common-law jurisprudence."

Section 310, at page 289, discusses exception to the general rule:

"Exception to, and Limitations on, General Rule.— It is not to be inferred from the rule stated above regarding the inadmissibility of proof of other crimes or offenses that the admission of evidence which shows or attempts to show the commission of an offense other than the particular one with which the accused is charged must be excluded in all cases and under all circumstances. There are, on the contrary, several well-recognized exceptions to and limitations upon the general rule stated. Evidence of other crimes is al-

ways admissible when such evidence tends directly to establish the particular crime, and it is usually competent to prove the motive, the intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or the identity of the person charged with the commission of the crime on trial."

In Section 312, pages 292-293, the author deals with the exception respecting identification of the accused:

"Identification of Accused by Proof of Other Crimes. —The general rule that evidence of separate and independent crimes is inadmissible to prove the guilt of a person upon trial for a criminal offense is subject to a well-defined exception with respect to proof of the identity of the accused. The broad rule is that where evidence tends to aid in identifying the accused as the person who committed the particular crime under investigation, it is admissible, in spite of the fact that it tends to show that the accused is guilty of other crimes for which he is not on trial. This rule is applied in a wide variety of cases, such as arson, burglary, homicide, larceny, liquor law violations, robbery, and many other instances. It is permissible, in those instances where evidence is admitted of the commission of another similar crime for the purpose of showing identity, for the accused to introduce in evidence the record of a court showing his trial and acquittal of such other crime.

"It is clear, however, that proof of the commission of another crime is not properly admitted simply for

the purpose of identifying the defendant unless it is absolutely necessary to establish identification as an element of the crime. Generally speaking, it is only where the identity of the accused is not definitely connected with the offense on trial that other offenses may be introduced to connect and identify him with the case on trial. If the identity of the accused is established by other evidence and is therefore no longer an issue, it is improper to admit evidence of other crimes on the theory of proving identity. It is necessary also for such evidence to be admissible that there be such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. However, where the sole issue is the identity of the accused, the evidence on that question by the state may properly be permitted to cover a wide range, and in a measure the rigid rules of evidence will be relaxed."

And the further exception applicable where evidence of other crimes establishes a common scheme or plan or system is detailed in Section 314, page 296:

"Common Scheme or Plan.—Evidence of other crimes is competent in a criminal trial to prove the specific crime charged when it tends to establish a common scheme, plan, or system embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, notwithstanding the general rule excluding evidence which shows, or tends to show, that the accused has committed another crime wholly independent of that for which he is on trial. In other words, the law permits proof of a plan or scheme to commit a series of crimes

including the one for which the accused is being tried, and, as tending to show the existence of such plan or scheme, it allows testimony of the commission of crimes other than the one charged, but so related in character, time, and place of commission as to tend to support the conclusion that there was a plan or system which embraced both them and the crime which is charged."

With particular reference to prosecutions for abortions, it is said in 15 A.L.R.2d at page 1081:

"It is a well-established rule that evidence of other crimes committed by an accused, similar to that for which he is presently on trial, is ordinarily not admissible for the purpose of raising the inference that he more probably committed the particular offense charged by the prosecution, since he is required to meet only the specific accusations laid in the indictment or information. It is equally well established, however, that evidence which is relevant to an issue in a criminal case will not be excluded merely because it shows, or tends to show, that the defendant has been guilty of other similar offenses. These principles are sometimes framed as a general rule of *inadmissibility* bearing certain exceptions.

\* \* \* \* \* \*

"Although the 'general rule' as to inadmissibility of evidence of other similar offenses is recognized, expressly or by implication, in most of the cases involving prosecutions for abortions, this rule is noted chiefly in connection with one or the other of its exceptions, so that, for practical purposes, the gen-

eral rule might be better stated affirmatively, as providing that evidence of other similar offenses may be shown against one on trial for an offense involving abortion wherever it is shown to be relevant to a contested issue in the case."

And concerning identification of a defendant charged with abortion, the annotator says at page 1103:

"Evidence as to the commission of abortions other than that involved in the offense for which the accused is on trial may also be admitted where it is relevant to the question of his identification."

Upon this record and the foregoing authorities, we are firmly of opinion that it was not error to admit evidence of other abortions by the defendant. Here was a defendant long since deserted by her husband, left with the full burden of supporting five children, very apparently under continuous and considerable financial stress in the operation of her beauty shop and providing for her family; according to her testimony she was acquainted with various abortion methods; the abortion business was lucrative, provided additional income; the beauty shop afforded an excellent place to conduct such operations, as well as opportunity to obtain information about young girls desiring such services and to make known her availability therefor. There was no lack of motivation to embark upon such an enterprise. The methods and plans she adopted and used to further this unlawful business were simple, invariable, and demonstrated the whole scheme effectively and well. Each "patient" was instructed to bring a rubber catheter; each was conducted to the same room in the rear of

the beauty shop, required to remove her under-clothing and recline on the couch; in every case the defendant then employed a metal speculum to open the vagina and inserted the catheter; each paid defendant a fee of $25; and, as was reasonably to be expected in such a business, each girl brought or referred others to the defendant. All the girls who testified that the defendant performed abortions upon them, including Kathryn Clayborn, were brought to her by others upon whom she had done the same operation in the same room in the same way and manner.

■ Under the trial court's cautionary instruction, quoted above, we think the jury was properly permitted to consider all of these circumstances and that they could by so doing establish the identity of the defendant as the person who committed the abortion upon Kathryn Clayborn as charged in the indictment. The instruction, considered in its entirety, imposed adequate limitations and restrictions upon the jury's use of evidence of the other abortions. Considering, as we have seen, that the defendant's identity was the only question directly in issue in the case, under her own insistences of mistaken identity and corrupt attempts by these girls to shield and cover up for someone else, there was no occasion or reason for the jury to consider the evidence of the other abortions for any other purpose; and we cannot say upon this record that they did so. The circumstances in this case do not take us beyond the permissible boundaries established by Warren v. State, supra.

Moreover, as stated by the Court in Thompson v. State, supra, we are not of opinion that this evidence was in any sense determinative, or, indeed, really affected

the result. We are satisfied that conviction would have followed without the introduction of this evidence. The Assignments challenging its admission must be overruled.

In considering the first Assignment of Error, we do so upon the well established law of this State that a conviction in a criminal case will not be reversed on the facts unless it is shown that the evidence preponderates against the verdict and in favor of the innocence of the accused, and the burden is upon the defendant to make this showing. The presumption of innocence disappears upon conviction in the trial court and is displaced here by a presumption of guilt, and it is with this presumption that we must consider the case on appeal. A most excellent statement of the legal effect of the verdict of the jury and the law governing appellate review was made by Mr. Justice Felts in Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523:

> "This argument overlooks the legal effect of the verdict of the jury, and also the law governing appellate review. The jury and the Trial Judge saw the witnesses face to face, heard them testify, and observed their demeanor on the stand, and were in much better position than we are, to determine the weight to be given their testimony.

> \* \* \* \* \* \*

> "On appeal, therefore, the jury's verdict is to be taken as establishing the truth of the case. In civil cases the verdict will not be disturbed on the facts if it is supported by any material evidence. In criminal cases, out of tenderness to human life or liberty, the rule is

more lenient: The verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. Cooper v. State, 123 Tenn. 37, 56, 153, 18 S.W. 826.

"As said so often by this Court, the jury's verdict of guilt, approved by the Trial Judge, establishes the credibility of the witnesses supporting the verdict, displaces the presumption of innocence that attended defendant on the trial, raises a presumption of his guilt, and puts on him the onus of showing on appeal that the evidence preponderates against the verdict and in favor of his innocence. Cooper v. State, supra, 123 Tenn. 37, 56-61, 153, 138 S.W. 826; Turner v. State, 188 Tenn. 312, 322, 219 S.W.2d 188; Batey v. State, 191 Tenn. 592, 596, 235 S.W.2d 591, 593; Ivy v. State, 197 Tenn. 650, 652, 277 S.W.2d 363; Anderson v. State, 207 Tenn. 486, 341 S.W.2d 285.

"So, under the law by which we are bound, we may review the evidence only to determine whether it preponderates against the verdict and in favor of the innocence of defendant; and in such review we must take the verdict as having established the credibility of the State's witnesses."

For other cases so holding see: Brooks v. State, 187 Tenn. 361, 215 S.W.2d 785; Cole v. State, 187 Tenn. 459, 215 S.W.2d 824; Walker v. State, 197 Tenn. 452, 273 S.W.2d 707; Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856; Nichols v. State, 200 Tenn. 65, 289 S.W.2d 849; Stoots v. State, 205 Tenn. 59, 325 S.W.2d 532; Smith v. State, 205 Tenn. 502, 327 S.W.2d 308; Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895; White v. State,

210 Tenn. 78, 356 S.W.2d 411; King v. State, 210 Tenn. 150, 357 S.W.2d 42; Staggs v. State, 210 Tenn. 175, 357 S.W.2d 52; Rowan v. State, 212 Tenn. 224, 369 S.W.2d 543; Lester v. State, 212 Tenn. 338, 370 S.W.2d 405; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; State v. Fowler, 213 Tenn. 239, 373 S.W. 2d 460; Grant v. State, 213 Tenn. 440, 374 S.W.2d 391; Wilkerson v. State, 214 Tenn. 1, 377 S.W.2d 1; McKinnie v. State, 214 Tenn. 195, 379 S.W.2d 214; Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780; Gann v. State, 214 Tenn. 711, 383 S.W.2d 32; Bacon v. State, 215 Tenn. 268, 385 S.W.2d 107; Arterburn v. State, 216 Tenn. 240, 391 S.W.2d 648; Shiflet v. State, 216 Tenn, 365, 392 S.W.2d 676; Sanders v. State, 216 Tenn. 425, 392 S.W.2d 916; Troglen v. State, 216 Tenn. 447, 392 S.W.2d 925; Watkins v. State, 216 Tenn. 545, 393 S.W.2d 141; Burrus v. State, 216 Tenn. 586, 393 S.W. 2d 159; Chico v. State, 217 Tenn. 19, 394 S.W.2d 648; Brenner v. State, 217 Tenn. 427, 398 S.W.2d 252; Pryor v. State, 217 Tenn. 695, 400 S.W.2d 700; Monts v. State, Tenn., 400 S.W.2d 722; Patterson v. State, Tenn., 400 S.W.2d 743.

■ The evidence in this case has been reviewed fully herein. Considered in the light of the law governing appellate review established by the authorities cited, as we are bound to do, the testimony of the State's witnesses amply sustains the jury's verdict of guilt. This Assignment is without merit and is overruled.

■ As noted at the outset, the jury fixed the defendant's punishment at not more than one and one-half years in the penitentiary, and the court entered judgment that she be confined in the penitentiary at

hard labor for a period of not more than one and one-half years. There can be no doubt about our authority as well as our duty to modify the judgment of the court in this case so as to provide that the plaintiff in error serve not less than one nor more than one and one-half years in the State Penitentiary. Leek v. State, 216 Tenn. 337, 392 S.W.2d 456; Pope v. State, 149 Tenn. 176, 258 S.W. 775; Holt v. State, 210 Tenn. 188, 357 S.W. 2d 57. As so modified, the judgment is affirmed.

WALKER, P. J., and GILLIAM, J., concur.