3L 552
4L 177
16L 148
1pi 523

JOHN HALL *et als. v.* THE STATE.

1. CRIMINAL LAW. *Special term of the court. Offenders may be indicted and tried.* Under the provisions of the Code which authorize the appointment of a special term "whenever it is necessary for the dispatch of business," and direct "that all business of every nature and kind shall be conducted as at the regular term," offenders may be indicted and tried at a special term of a criminal court.

2. SAME. *Arson.* The provisions of the Code in relation to arson and house-burning were not repealed by the act of 1865, ch. 5, sec. 4, which only increased the penalties for the offense of burning a dwelling house, and certainly had no effect on those provisions of the Code which related to the burning of any other building than a dwelling house, as for example a store house.

3. SAME. *Indictment. General Verdict.* Under an indictment containing two counts, one for burning a certain house, to-wit, a store house, under the Code, sec. 4666, and the other, under sec. 4668, for burning a valuable building, to-wit, a store house, a general verdict assessing a punishment within both sections will be good, although the minimum punishment, by confinement in the penitentiary under one section may be greater by three years than the minimum punishment under the other.

4. SAME. *Evidence. Conspiracy.* Under an indictment for the burning of a house, evidence is admissible of the organization of a company

Hall v. State.

to rob and burn houses generally, if the particular act were done by that company in pursuance of the general design, although the selection of the house was made afterwards.

5. SAME. *Same.* *Accomplice.* *Corroboration.* Evidence is admissible of facts tending to corroborate the testimony of an accomplice, although not otherwise directly bearing on the main fact tried.

FROM RUTHERFORD.

Appeal in error from the Criminal Court of Rutherford county. J. M. QUARLES, J.

C. A. SHEAFE and J. W. CHILDRESS for Hall *et als.*

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

The plaintiffs in error, seven negroes and one white man, were indicted and convicted for arson. The white man and five of the negroes prayed an appeal in error to this court, which was granted, after their motions for a new trial, and in arrest of judgment were overruled. The other two negroes, John Hall and Burrell Smith, have brought the case before us by writ of error. They have, however, been sentenced to death by this court upon another indictment for murder, and this case, as to them, will not now be disposed of.

The indictment was found, and the defendants tried at a special term of the Criminal Court of Rutherford county, appointed by the judge of that court in vacation, as prescribed by the Code, section 3941. It is argued on behalf of the appellants, that the trial of new cases could not be had at that time. In support

of this position, counsel cite *Brown* v. *Newby*, 6 Yer.,
395. But that case merely holds that, under the act
of 1827, ch. 79, sec. 4, the court had power to ap-
point a special term to do any and every description
of business on the docket, and that an appointment
"for the trial of the causes on the civil docket,"
would include chancery as well as law cases. The
act of 1827 gave power to appoint a special term for
the trial of all cases "upon the docket." The argu-
ment is that the causes to be tried could only be those
"upon the docket" at the time of the appointment
of the special term, and that the like construction
should be given to the section of the Code based on
the statute. The construction put upon the language
of the original statute is, perhaps, too narrow. No
doubt the main object for authorizing special terms,.
was to relieve the dockets from the business then on
them, but it would not follow that after the term was,
appointed, any business properly on the docket during
the term, might not be disposed of, all other questions.
out of the way. And the Code, as if to remove all
doubt, authorizes the appointment of a special term
"whenever it is necessary for the dispatch of business,"
and directs that "all the business of every nature and
kind shall be conducted as at the regular term."
Code, sections 3940, 3945. No objection to the trial
of the cause on this ground was made in the court
below. Two of the defendants, McFerrin and Butler,
applied for a continuance on affidavits filed, but these
affidavits are not in the record, nor is any error as-
signed in the action of the court on them.

The indictment contains two counts; the first count is for willfully, maliciously and feloniously burning "a certain house, to-wit, a store house of the value," etc. The second count is for similarly burning "a certain valuable building, to-wit, a store house, etc. The first count is based on the Code, section 4666, and the second on the Code, section 4668. It is objected that these sections of the Code were, by implication, repealed by the act of the 17th of May, 1865, ch. 5, and, although the latter act was expressly repealed by the act of 1877, ch. 84, sec. 1, that the provisions of the Code were not revived, because their "title or substance" was not recited in the caption or otherwise of the act of 1877, which, it is insisted, is necessary to revive the previous law under the Constitution of 1870, art. 2, sec. 17.

The Code, section 4666 is: "Any person who willfully and maliciously burns the house or out-house of another, is guilty of arson, and shall be punished by confinement in the penitentiary not less than five nor more than twenty-one years."

Section 4668: "Every person who shall willfully and maliciously burn or set fire to any house, barn, stable, or other valuable building, or any building containing valuable property therein, or any stack or shocks of grain, fodder, straw or hay, or any valuable bridge, boat, or other water craft, shall be imprisoned in the penitentiary not less than two nor more than twenty-one years."

The act of 1865, ch. 5, sec. 4 is: "Any person duly convicted of house or bridge burning, shall suffer

death by hanging; provided, the jury, if they think proper, may commute the punishment to imprisonment in the penitentiary for a period of not less than ten nor more than twenty-one years. And provided further, that nothing in this act shall be so construed as repealing the laws now in force for the punishing of the offenses mentioned in this act; but all persons who have heretofore committed any of the offenses mentioned in this act, shall be tried under the existing laws, and, if convicted, shall be punished as now prescribed by law."

The act, it will be seen, does not in terms repeal any pre-existing acts. On the contrary, it says that nothing in it shall be construed " as repealing the laws now in force for the punishing of the offenses mentioned." It is true, this language, when construed in connection with what immediately follows, might be held to mean that the laws then in force were not to be considered as repealed, so far as offenses previously committed were concerned. But the whole act of 1865 was of a peculiar character, manifestly intended to meet the state of demoralization touching the rights of property existing at the close of the war, and to be temporary, not permanent. By its first, second and third sections it prescribes the punishment of death, with the like power in the jury to commute to confinement in the penitentiary for an increased term of years, for the crimes of stealing a horse, mule or ass, of breaking open the "house of another," and robbing or stealing from the person. The object of the proviso at the end of the fourth section seems to have been to prevent

the repeal by implication of the existing laws on these subjects, and to show that the act itself was designed to add additional punishment for the offenses.

The act was really *in terrorem*, to restrain the license of the hour, leaving the administrators of the law the option of proceeding under it, or under the previous statutes. Repeals by implication are never allowed, unless the latter and the former acts cannot possibly stand together. *Cate* v. *State*, 3 Sneed, 120; *Smith* v. *Hickman*, Cooke, 330. And the general rule is, that subsequent statutes which add cumulative penalties, or institute new modes of proceeding, do not repeal former penalties or methods of proceeding, without negative words, *Bennett* v. *State*, 2 Yer., 472; so held, where the defendant had been indicted under the existing law for an offense the punishment of which was a fine, and claimed that a subsequent act, which punished the same offense by imprisonment, pillory and infamy, repealed the previous penalties. And in that case there was no such proviso as is found in the act of 1865.

The act of 1865 increases the punishment for "house and bridge burning," and also for breaking open "the house of another." The latter words came before this court for construction in *Palmer* v. *State*, 7 Col., 82, and were held, in view of the highly penal character of the act, to embrace only a mansion or dwelling house. This construction was followed in *Mathis* v. *State*, 3 Heis., 127. In this view, and for the same reason, the "house burning" of the fourth section would be limited to the mansion house, leaving the

pre-existing law in full force as to every other class of houses. The provisions of the Code, so far as they are applicable to a "store house," the character of building described in the indictment before us, have never been interfered with. The argument relied on rests upon the assumption that the sections of the Code, under which this indictment was found, were repealed *in toto,* and necessarily fails in the view we have taken.

In this view, too, it becomes unnecessary to consider whether a statute which has been repealed, will be revived by a repeal of the repealing act, without being recited by its title or substance in the caption or otherwise of the last repealing act, under the provision of the Constitution of 1870, art. 2, sec. 17.

The first count of this indictment is framed under the Code, section 4666, for burning "a certain house, to-wit, a store house," etc. The second count is under the Code, section 4668, for burning "a certain valuable building, to-wit, a store house," etc. The punishment under the first of these sections is confinement in the penitentiary for not less than five nor more than twenty-one years; under the second, for not less than two nor more than twenty-one years. No motion was made to quash the indictment, nor to compel the attorney general to elect upon which count he would proceed. The joinder of several distinct felonies of the same degree constitutes no ground of demurrer or arrest of judgment, and of course cannot be asigned as error in a revising court. *Wright* v. *State,* 4 Hum., 194. Separate offenses, punished by differ-

ent degrees of severity, but differing only in degree and belonging to the same class of crimes, may be united, and often must be to attain the ends of justice; as for example, the offenses of stealing and receiving stolen goods. *Hampton* v. *State,* 8 Hum., 69; *Cash* v. *State,* 10 Hum., 111; *Ayres* v. *State,* 5 Col., 26. *A fortiori,* where the two counts in the indictment are obviously for the same offense. *Wright* v. *State,* 4 Hum., 194. In this case, the offenses charged are of the same class of crimes, scarcely differing in degree, and only slightly in punishment. The face of the indictment, as well as the proof, shows that each count is for burning the same store house. It may well fall under either section of the Code, and the general verdict is undoubtedly good. Code, section 5217.

Objection is made to the action of the court below in refusing to exclude certain testimony. The principal witness is a confessed accomplice, who testified that he and the prisoners had in December previous to the burning, which occurred on the last night in February, organized themselves into a company to rob and burn houses, described the form of swearing in, and stated their agreement to help each other, if caught, by money or fire. The same witness testifies that the agreement to burn the particular house was only entered into on the night of the fire. The objection to the evidence of the organization of the company and what then passed is, that they are not sufficiently connected with the act for which the parties were indicted. The witness himself says that the burning was in the pursuance of the original agreement. What he means is,

that the conspiracy was to rob and burn generally, and that any subsequent burning would be in pursuance of the agreement, although the particular building was not then fixed upon. If there was such a conspiracy, and of this the jury were to judge, the evidence was clearly admissible as explaining the concert of action of the defendants.

Objection is made to the refusal of the court to exclude the statement of a witness, that he slept on the night of the fire in a room in the second story of the building adjoining the store house which was burned. But the statement was merely explanatory of the important fact deposed to by the witness, and could not possibly have prejudiced the defendants. The material fact deposed to by him was, that he had thrown water from his window about the time the accomplice and the prisoners were engaged in their scheme of robbing and burning, according to the testimony of the accomplice, who also proved that they had been interrupted and startled by the throwing out of water from an upper window of the block of buildings. The evidence was competent and very important.

Objection is also taken to the testimony of two witnesses who depose to seeing some of the prisoners together, and having conversations with them, after the fire. But the evidence was competent, for what it might be worth, to show the association of the parties, and thereby corroborate the accomplice.

The judge charged, as requested by the defendants, that when several persons are jointly indicted, and

the accomplice is corroborated as to some of them, although the jury may give credit to him as to those to whom the corroboration applies, they should not credit the evidence of the accomplice as to those against whom there was no corroboration, if there was no proof, positive or circumstantial, to satisfy the jury of the guilt of the latter, except the testimony of the accomplice. There is nothing in this charge, or in the ruling of the court upon the testimony, either in admitting or excluding it, to which any of the defendants can except. The evidence of the accomplice is clear and explicit as to the actual commission of the crime for which the parties were indicted, and the participation of all of the defendants in the act. He undertakes to state the position of the several participants and what they did. The back door of the store house mentioned in the indictment was bored through in two or three places by an auger, with a view to breaking into the store, but the auger came in contact with an iron safe pushed against the door. The parties thereupon set fire to the door, which was found charred for several feet on the next morning. The accomplice is corroborated as to the defendants, John Hall and Burrell Smith, by the finding of the auger at their house, where they were living together, the auger being of an unusual size, and fitting the holes in the door. He is also corroborated as to these defendants and the white defendant, Hicks Slaughter, by the testimony of several witnesses, who depose to seeing them frequently together, and one of them to a conversation with Burrell Smith and Slaughter, in

36—VOL. 3.

which they urged him to join their band. As to those three defendants, Hall, Smith and Slaughter, the accomplice is corroborated, and we see no reason for disturbing the verdict as to Slaughter, the case as to the defendants Hall and Smith not being now before us.

There are only two witnesses whose testimony can be said to corroborate the evidence cf the accomplice as to the other defendants; one of these testifies that Burrell Smith invited him to join their society, and meet him in front of a certain store in Murfreesboro that night, about seven or eight o'clock. Witness met him as requested, the defendant Slaughter being with Smith, and they suggested inducements why he should join them, among other things saying that he would thereby get plenty of money. While they were talking, the other witness passed by, and Slaughter said hold, that rascal will tell. The conversation was interrupted by the blowing of a whistle towards the depot, which Slaughter answered, and he and Smith went towards the sound. Not long afterwards, on the same night, witness went over towards the depot, and saw defendants Slaughter, Hall, Smith and McAdoo, with two men he did not know. He did not, he says, see the defendant Halbert with them that night. This witness had started out with saying that he knew all of the defendants except Butler. And after deposing to the conversation with Smith and Slaughter, he adds: "The two Bailey boys (who are not defendants) were with them sometimes. Several times when I came from church, I saw them all together late at night.

There were two of them I did not know. I don't know Butler and McFerrin (defendants). Saw Halbert (defendant) but once, when I met them near Mrs. Garrett's in town. Hicks Slaughter was with them all the time. I saw Bill Smith (the accomplice) with them. They were sometimes in crowds. I met them once at the foot of Main street. Hicks, Slaughter, Burrell Smith and Bill Smith asked me to join."

All that the witness deposed to occurred after the fire on which the indictment is found, and the principal conversation on the very next night thereafter.

The testimony of the other corroborating witness, so far as it bears on the defendants other than Slaughter, Hall and Smith, is in these words: "Know all the prisoners except Joe Butler and Henry McFerrin. I saw Burrell Smith and Jack Monroe (the preceding witness), talking on the street in front of Smith's store. Slaughter was sitting on steps about thirty yards off. When I passed, Burrell Smith and Jack Monroe were talking, and Burrell Smith said, don't say anything where that fellow is. I passed on by. Ed. Lytle (defendant), was standing there near the hotel corner, talking with some boys, none of whom I remember, except Ed. Lytle. When I passed back the third time, there was a whistle blown and all moved off towards it. Burrell went towards Slaughter. The whistle was out towards the depot, and the second one was answered by some one near me, and then they were gone." This witness only identifies the defendant Ed. Lytle as with some boys, who moved off with Smith and Slaughter at the sound of the

whistle. The other witness testifies to no one as present at the time of his interview when the whistle blew,. except Smith and Slaughter. Says defendant Halbert was not there, and that he never saw him with them. except once. He did not know the defendants Butler and McFerrin, and does not say he ever saw either of them with the other parties. Says he saw defendant McAdoo with Slaughter, Hall and Smith near the depot. When he says he several times saw "them" all together at night, he specifies to no particular person. He has just been speaking of the "two Bailey boys," who are not defendants, and may mean that they were with Smith, Hall and Slaughter. He could not refer to Butler and McFerrin, for he did not know them, and no where identifies them. There is no corroborative evidence as to these two defendants at all. Halbert seems to have been seen in the company only once on the public street. Ed. Lytle and Ed. McAdoo once at night, at separate hours the same night. This is too weak to send men to the penitentiary for twenty years.

In addition, the proof is that McFerrin lives near the town of Woodbury, about nineteen miles from Murfreesboro, and two witnesses swear positively to being with him at Woodbury until a late hour on the night of the fire, giving specific reasons why they remember the night. Several witnesses also depose to the regularity of habits of McAdoo in remaining at home at night during the period spoken of by the witnesses.

State *v.* Staley.

The judgment will be affirmed as to Hicks Slaughter, and reversed as to the other defendants now before us, who will be remanded for a new trial. The case is suspended for the present as to John Hall and Burrell Smith on their writ of error.