John Keaton v. The State.

*No. 929.   Decided June 26th, 1896.*

**Local Option — Sale — What is — Exchange or Barter — Construction of Statute.**

On a trial for violation of local option, where it appeared that defendant delivered intoxicating liquor to another party, in the local option precinct, for which such other party was to pay him in other liquor at some future time; and it was contended that this constituted an exchange or barter, and not a sale.  Held:  The transaction constituted a sale.  Penal Code, Art. 402, prohibiting the "sale" of liquors in a local option district, uses the word sale in its broader sense, including barter and exchange, and not in the restricted technical sense of a sale for a money price.  A sale is an agreement made between a person having power to dispose of the property in a thing, who is called the seller, and another person, who is called the buyer, with the joint intention expressed, as by law required, that the property in the thing shall, at such time and in such manner as is then specified, be transferred to the buyer, in consideration of value to be rendered by the buyer, and vice versa.

APPEAL from the County Court of Parker.   Tried below before Hon. J. L. L. McCall,· County Judge.

This is an appeal from a conviction for a violation of local option, the punishment being assessed at a fine of $25, and twenty days' imprisonment in the county jail.

The case is sufficiently stated in the opinion.

*Harry W. Kuteman,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Conviction for selling intoxicating liquors in a local option precinct, to-wit: Precinct No. 1, Parker County, Weatherford being situated in this precinct.   The only question in this case worthy of consideration is, do the facts show a sale in contemplation of the statute inhibiting sales in local option precincts?   Article 402, under which the indictment is framed, provides:  "If any person shall sell any intoxicating liquor in any county, justice precinct, city, or town, in which the sale of intoxicating liquors has been prohibited under the laws of this State, or if any person shall give away any intoxicating liquor in any such county, justice precinct, city, or town, with the purpose of evading the provisions of said laws, he shall be punished by a fine of not less than $25 nor more than $100, and by imprisonment in the county jail not less than twenty nor more than sixty days."   The proof in this case shows beyond any controversy that the appellant delivered to the witness intoxicating liquors, the liquor being then in that precinct, and the appellant was to pay for same in liquor at some future time.   The contention of the appellant is, that this was an exchange or barter, and not a sale, as contemplated by the statute, on the subject.   The decision of this question involves the construction of what is meant by the lawmakers in enacting this statute.   Mr. Travis, in a recent work on the subject of sales and collateral subjects, Vol. 1, p. 1, et seq., discusses this question at length.   He concedes that Story, Parsons and Benjamin, all treat a sale as distinct from a barter or exchange,

and as being based solely on a price in money. He takes issue with these authorities, and shows from the authorities to which they refer, for their definitions of sale, and upon which they predicate such definitions, that they do not support them. He quotes from Blackstone, Blackburn, Campbell and Kent, and adopts the view maintained by them, that a sale is a contract for the transfer of property from one person to another for a valuable consideration. He quotes from Mr. Blackburn, as follows: "That a contract concerning the sale of goods may be defined to be a mutual agreement between the owner of the goods and another, that the property in the goods, shall, for some price or consideration be transferred to the other at such time and in such manner as is there agreed. If the consideration to be given for the goods is not money, it might perhaps in popular language rather be called barter than a sale, but the legal effect is the same in both cases." Mr. Campbell says: "That a sale is an agreement made between a person having power to dispose of the property in a thing, who is called the seller, and another person, who is called the buyer, with the joint intention expressed as by law required, that the property in the thing shall at such time and in such manner as is then specified, be transferred to the buyer, in consideration of value to be rendered by the buyer, and vice versa." We think that our legislature in passing the local option law, had in view a sale in its broader sense, and not a restricted technical sale for a money price. The evil to be remedied was the prevention of the traffic in intoxicating liquors within a prohibited district, and if it were allowable to carry on an exchange or barter for whiskey in such prohibited district, the law would be rendered nugatory. The statute itself not only inhibits sales as such, but prohibits the giving away of any intoxicating liquors in any such local option precinct, made with the purpose of evading the provisions of said law. If it be conceded that such giving away must be a mere color in order to disguise a sale, it would appear that the act was intended to be comprehensive, and that no character of sale, real or colorable, should be permitted under the law. This intent is further manifested by a reference to other articles of the act in question. (See the regulations with reference to physicians' certificates.) It is therein provided that a prescription given shall not be used in obtaining intoxicating liquors illegally. (See, Art. 405, Rev. Penal Code.) In our opinion, it was the intention of the legislature to inhibit the sale of intoxicating liquors in the broader sense of that term, including barter and exchange. This view is not only in consonance with the spirit of the statute itself, but is supported by the authorities heretofore referred to, defining sales. The exchange in this case was but a mode of sale. Although the whiskey was traded or bartered for whiskey, it was a valuable consideration and was the *quid pro quo* of the transaction. There was evidence introduced in the case tending to, and proving similar transactions between the appellant and other parties. This evidence was objected to. Under the facts of this case, we deem it unnecessary to consider the admissibility of these other transactions. Appellant re-

ceived the lowest punishment, and this evidence therefore did not injure him. There was no controversy or question raised as to the truthfulness of the State's witnesses in regard to this transaction. The transaction was not questioned, and as we have before stated, constituted a sale. The admission in evidence of other transactions did not affect this question. The judgment is affirmed.

*Affirmed.*