Joe HALQUIST, alias Joe Hopeless,
Plaintiff in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Oct. 4, 1972.

Certiorari Denied by Supreme Court
Dec. 4, 1972.

John D. Lockridge, Knoxville, for plaintiff in error.

David M. Pack, Atty. Gen., Charles W. Cherry, Asst. Atty. Gen., Nashville, Joseph J. Nigro and John W. Gill, Asst. Dist. Attys. Gen., Knoxville, for defendant in error.

## OPINION

OLIVER, Judge.

Represented by retained counsel throughout, the defendant is before this Court by his duly-perfected appeal in the nature of a writ of error contesting his conviction of unlawfully selling Lysergic Acid Diethylamide (LSD) and penitentiary sentence of not less than five nor more than six years.

We first consider his Assignment of Error challenging the sufficiency of the evidence to warrant and sustain the verdict. In examining this contention, we are bound by the well-established rule, settled by numerous decisions of the Supreme Court of Tennessee and this Court, that a verdict of guilt, approved by the trial judge, accredits the testimony of the State's witnesses, resolves all conflicts in the testimony in favor of the State and establishes the State's theory of the case; that under such a verdict the presumption of innocence which the law throws around an accused and which stands as a witness for him in his trial disappears, and upon appeal that presumption of innocence is replaced by a presumption of guilt; that this Court is not permitted to reverse a conviction upon the facts unless the evidence clearly preponderates against the verdict of the jury and in favor of the innocence of the accused; that we may review the evidence only to determine whether it preponderates against the verdict; and that the defendant has the burden of showing on appeal that the evidence preponderates against the verdict and in favor of his innocence. Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, 1 Tenn. Cr.App. 1, 425 S.W.2d 799; Morelock v. State, Tenn.Cr.App., 460 S.W.2d 861.

This rule governing appellate review of criminal convictions makes unnecessary and, indeed, inappropriate, any detailed discussion of the evidence pro and con. Hargrove v. State, 199 Tenn. 25, 28, 281 S.W.2d 692, 694; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237.

The material evidence may be stated briefly. The evening of July 5, 1971, dressed in an old Army shirt, worn-out blue jeans, and socker shoes and sporting a mustache and long hair, a Knoxville Po-

lice Department undercover narcotics agent, Tom Key, went to an area on Cumberland Avenue in Knox County known as "the strip," near the University of Tennessee, in connection with his assignment of apprehending persons trafficking in drugs. He approached Mike Bledsoe and asked him if he had any drugs for sale. Bledsoe in turn introduced Key to the defendant and a John Hutchinson and told them that Key was "all right" and that he wanted some "grass," the vernacular for marijuana. The defendant and this officer then walked to a nearby parking lot where the defendant offered to sell him a "lid" of marijuana for $20 and a quantity of mescaline for $2.00. Because the defendant did not want to conduct the transaction at that place, he and Hutchinson and the officer got into the latter's Volkswagen bus and drove to an alley near the University Inn. There the officer offered to buy a "dime bag," the vernacular for $10 worth of marijuana, and the defendant sold him that amount of marijuana after some reluctance to halve his "lid," and also sold him a tablet represented as mescaline for $2.00. Tests conducted by the State toxicology laboratory in Nashville showed that the plant material was marijuana and that the mescaline tablet contained LSD. The defendant neither testified nor presented any evidence.

■ Surely it is unquestionable that he has failed to carry his burden of demonstrating here that the evidence preponderates against the verdict and in favor of his innocence.

At the close of its proof, the State elected to proceed only on the first count of the indictment which charged the defendant with selling LSD, and abandoned the second count which charged him with selling marijuana, and the jury was so instructed.

By his first four Assignments of Error the defendant attacks the sufficiency of the indictment, referring of course to the first count, contending that it is vague and general and states no offense under the law.

The first count of the indictment charges that the defendant "On the 5th day of July 1971, in the State and County aforesaid, unlawfully, knowingly and feloniously did sell, barter and trade a quantity of Lysergic acid diethylamide (L.S.D.), the same being a controlled substance, in violation of Chapter 163 of the Public Acts of 1971 of the State of Tennessee, contrary to the statute and against the peace and dignity of the State."

LSD is a controlled substance under TCA § 52–1413, Schedule I, and marijuana is a controlled substance under TCA § 52–1422, Schedule VI. The unlawful manufacture, delivery, sale, or possessing with intent to manufacture, deliver, or sell those and other controlled substances are proscribed and penalized by TCA §§ 52–1432—52–1434.

■ The defendant insists that the indictment is too vague and general and states no offense under the law of this State because it fails to state (1) the place where the alleged offense occurred, (2) the time of day when it occurred, (3) the name of the alleged purchaser, and (4) because inclusion of the terms "barter" and "trade" makes the indictment self-defeating because bartering and trading are not offenses under the statute. There is no merit in these contentions.

TCA § 40–1809 provides: "It is not necessary for the indictment to allege where the offense was committed, but the proof shall show a state of facts bringing the offense within the jurisdiction of the county in which the indictment was preferred."

The gist of the complaint that the indictment fails to state the time of day the sale of these substances was made is that this omission made it impossible to determine whether it charged one or two offenses, and that he was prejudiced by the

evidence concerning his sale of marijuana charged in the second count which the State then dismissed after concluding its proof. As already noted, LSD and marijuana are in different classifications or schedules, and traffic in each carries a different penalty. Thus, the sale of each drug constituted a separate offense regardless of when the transactions occurred.

It is well settled in this State that if the different offenses charged in the different counts grow out of the same transaction, or if they be but different species of the same offense, the several counts may and should be joined in the same indictment. Galbreath et al. v. State, 187 Tenn. 669, 216 S.W.2d 689; Tenpenny v. State, 151 Tenn. 669, 679, 270 S.W. 989; Davis v. State, 85 Tenn. 522, 526, 3 S.W. 348; Foute v. State, 83 Tenn. 712; Kannon v. State, 78 Tenn. 386; Murphy v. State, 77 Tenn. 373, 377; Smith v. State, 76 Tenn. 386; Lawless v. State, 72 Tenn. 173; Hall v. State, 71 Tenn. 552, 558; Smith v. State, 70 Tenn. 614; Kelly v. State, 66 Tenn. 84; Ayrs v. State, 45 Tenn. 26, 28; State v. Lea, 41 Tenn. 175; Cash v. State, 29 Tenn. 111; Wright v. State, 23 Tenn. 194. In Galbreath v. State, 187 Tenn. 669, 216 S.W.2d 689, supra, the Court said: "The insertion of several counts charging kindred offenses which the proof may develop to be a violation of one statute or another is a common and approved practice, and tends to a much more rapid dispatch of the business of the Court. We do not think such practice is either unfair or prejudicial to defendants."

And where the several counts of an indictment are based upon the same transaction, the State cannot be required to elect to proceed upon one count or the other. Raine v. State, 143 Tenn. 168, 226 S.W. 189; Lawless v. State, supra.

Moreover, in this case the punishment for selling LSD is not less than five nor more than 15 years in the penitentiary. TCA § 52–1432(a)(1)(A). From the fact that the jury fixed the defendant's maximum imprisonment at only six years, it is manifest that he was not prejudiced by the fact that he was also charged with selling marijuana and the State dismissed that count at the conclusion of its proof.

The settled law of this State is that an indictment charging unlawful sale of whiskey is not defective for failure to allege the name of the person to whom the sale was made, Galbreath v. State, supra, nor if it charges that the sale of liquor was "to a person to the grand jurors unknown," State v. Carter, 26 Tenn. 158. See also: State v. Harris, 34 Tenn. 224. Unquestionably, the same principle is applicable where, as here, the indictment charges the unlawful sale of these particular controlled substances.

In Brown v. State, 121 Tenn. 186, 114 S.W. 198, our Supreme Court quoted approvingly from Keaton v. State, 36 Tex. Cr.R. 259, 38 S.W. 522:

"'In our opinion it was the intention of the legislature to inhibit the sale of intoxicating liquors, in the broader sense of that term, including barter and exchange. This view is not only in consonance with the spirit of the statute itself, but is supported by the authorities heretofore referred to defining sales. The exchange in this case was but a mode of sale. Although the whisky was traded or bartered for whisky, it was a valuable consideration, and was the *quid pro quo* of the transaction.'"

There can be no question that the interpretation of the term "sale" in *Brown* is equally applicable to the case at bar. Furthermore, TCA § 40–1806 provides:

"When the offense may be committed by different forms, by different means, or with different intents, such forms, means or intents may be alleged in the same count in the alternative."

There can be no doubt from the foregoing that the terms "sell," "barter"

and "trade" are alternative forms and means by which an illegal sale of the proscribed substances may be accomplished, and therefore inclusion of those alternate terms, albeit unnecessary, did not invalidate this indictment.

■ Next the defendant complains that the delay between the offense and the date of his arrest precluded him from properly defending himself and violated his Fifth, Sixth, and Fourteenth Amendment rights. The offense occurred on July 5, 1971 and the defendant was arrested on August 27, 1971. Agent Key testified that he made numerous drug purchases over a period of some four months, and that the lapse of time between the purchase from the defendant and his arrest was necessary in order for the undercover program to be effective. The defendant presented no proof that he was prejudiced by this delay and merely suggests that it should create a presumption of prejudice which the State must overcome. The law is to the contrary.

■ While there is no constitutional right to be arrested, Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374, courts have recognized that an unreasonable delay between the commission of the offense and the arrest may violate the defendant's constitutional rights if the delay results in prejudice to him or was part of a deliberate, purposeful and oppressive design for delay. Chapman v. United States, 376 F.2d 705 (2nd Cir.1967), cert. den. 389 U.S. 881, 88 S.Ct. 119, 19 L.Ed.2d 174; United States v. Napue, 401 F.2d 107 (7th Cir.1968), cert. den. 393 U.S. 1024, 89 S.Ct. 634, 21 L.Ed.2d 568, pet. to rehear den. 393 U.S. 1112, 89 S.Ct. 858, 21 L.Ed.2d 813; United States v. Wilson, 342 F.2d 782 (2nd Cir.1965), cert. den. 382 U.S. 860, 86 S.Ct. 119, 15 L.Ed.2d 98; United States v. Rivera, 346 F.2d 942 (2nd Cir.1965); Powell v. United States, 122 U.S.App.D.C. 229, 352 F.2d 705 (1965); Wilson v. United States, 409 F.2d 184 (9th Cir.1969).

However, a burden is cast upon the defendant to show that the delay between offense and arrest was not for a legitimate reason and was prejudicial. Powell v. United States, supra. A valid reason for such a reasonable delay is the legitimate governmental interest in keeping the identity of its undercover agents secret for a reasonable time. United States v. Napue, supra; Powell v. United States, supra; Wilson v. United States, supra. Their effectiveness and usefulness in such an assignment are destroyed if their identity becomes known to those suspected of involvement in the unlawful activity under investigation.

The defendant relies on Jackson v. United States, 122 U.S.App.D.C. 124, 351 F.2d 821 (1965). Although the Court in that case recognized that the interval between offense and arrest may be so great as to create a presumption of prejudice, it held that no prejudice could be presumed from a five-month delay.

In the case before us, the time between the defendant's sale of the drugs and his arrest was 47 days. He offered no proof of resulting prejudice, and the evidence clearly establishes a legitimate reason for this short delay. On these facts, the conclusion is inescapable that no constitutional right of the defendant was trenched upon by the fact that 47 days intervened between his offense and his arrest.

Another of the defendant's complaints is that the trial court erroneously sustained the State's objection to his questions concerning the "creative activity" of the officers and declined to give the jury a requested instruction on that subject, and also a requested instruction on the subject of entrapment. In essence the defendant is insisting that if the undercover agent or agents engaged in this program of combating and containing unlawful drug traffic, were equal contributors to the commission of the offense, or if the criminal intent or design originated in the mind of the agent or agents and they lured the defendant into committing the offense, then the defendant was entrapped.

■ Entrapment occurs when ". . officers of the law or their agents incited, induced, instigated, or lured accused into committing an offense which he otherwise would not have committed and had no intention of committing. Stated otherwise entrapment is the conception and planning of an offense by an officer and the procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer. Entrapment occurs only when the criminal conduct is the product of the 'creative activity' of law enforcement officials, that is, only where the criminal design originates in the mind of the police officer and not with accused, . . ." 22 C.J.S. Criminal Law § 45(2), pp. 138–139.

■ Not only is this record completely devoid of any evidence that undercover agent Key incited, induced, instigated, or lured the defendant into committing an offense which he otherwise would not have committed and had no intention of committing, but the law is settled in this State that the doctrine of entrapment is not recognized as a defense. Warden v. State, 214 Tenn. 398, 381 S.W.2d 247; Roden v. State, 209 Tenn. 202, 352 S.W.2d 227.

■ Likewise unmeritorious is the defendant's complaint that the trial court rejected his theory that the undercover agent was an accomplice and declined to instruct the jury that the testimony of an accomplice must be corroborated. The applicable rule of law is stated as follows in 23 C.J.S. Criminal Law § 788, p. 11:

"A detective or police officer who is engaged in attempts to discover violations of the law is not an accomplice of one charged with such a violation, even though the detective may have been instrumental in procuring the specific violation of the law on which the prosecution is based. Familiar illustrations of this principle are found in cases where detectives or other officers, investigating alleged illegal sales of liquor, purchase such liquor for the purpose of securing evidence, or where detectives join a conspiracy or a criminal organization for the purpose of exposing it and bringing the criminals to punishment.

"Where informers or agents, under the direction of public authorities, continue to act with their guilty confederates until the matter can be so far advanced and matured as to insure the conviction and punishment of such confederates, the informers are not accomplices."

See also: Warden v. State, supra, and authorities therein cited.

Affirmed.

RUSSELL, J., and JOHN D. TEMPLETON, Special Judge, concur.