# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 29, 2011 Session

## STATE OF TENNESSEE v. JOHN ADRIAN DAY

**Direct Appeal from the Criminal Court for Roane County**
**No. 12740      Russell Simmons, Jr., Judge**

**No. E2010-01108-CCA-R3-CD - Filed July 18, 2012**

The defendant was indicted on numerous charges stemming from his involvement in a domestic dispute over goldfish that occurred on October 22, 2002. After a trial by jury in which the defendant was represented by counsel, the defendant was found guilty of domestic assault, a Class A misdemeanor, resisting arrest, a Class B misdemeanor, and assault, a Class B misdemeanor. He was sentenced to six months probation on each count, with these sentences to be served concurrently. After his conviction, the defendant dismissed his trial counsel, proceeded *pro se*, and filed pleadings in the trial court that were construed as a motion for new trial. The trial court dismissed the motion, and the defendant now raises numerous challenges to his convictions, including claims that we liberally construe as a challenges to the sufficiency of the convicting evidence, challenges to the trial court's decisions concerning the admissibility and inadmissability of certain evidence, a challenge to the trial court's failure to provide certain jury instructions, and claims that his due process and speedy trial rights were violated. After carefully reviewing the record and the arguments of the parties, we hold that the evidence presented at trial was sufficient to support the defendant's convictions, and we hold that the majority of the defendant's remaining claims have been waived. We also hold that the defendant's due process rights were not violated by the trial court. Consequently, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, J., joined. JERRY L. SMITH, J., not participating.

John Adrian Day, *pro se*.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Scott McCluen, District Attorney General, and Roger Delp, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

On August 18, 2001, a domestic dispute occurred over some pet goldfish. The defendant had been storing these goldfish, which belonged to his friend, in a tank at the house he shared with the victim. The victim, a seventeen-year-old girl, purchased these goldfish from the defendant's friend, but apparently no one thought to inform the defendant. This small oversight led to a physical confrontation when the victim attempted to remove the goldfish from the defendant's tank and the defendant stopped her. The victim was injured and police were called to the scene. When they informed the defendant that he was under arrest, he resisted them both verbally and physically.

Differing accounts were given at trial concerning who was to blame for the violence; whether it be: (1) the defendant, who by law enforcement accounts was abusive, "belligerent," and "screaming and acting like a wild man;" (2) the victim, who according to accounts given by the defendant's friends and relatives was a "spoiled little brat" who "would self-inflict a lot of her own injuries"; or (3) Officer Nance of the Harriman Police Department, who according to those same defense witnesses was kin to the victim, responded to the disturbance call even though it was outside of his jurisdiction, and reportedly said "you don't beat on my family" and "I'm going down there to whip [the defendant's] butt" immediately prior to arriving at the defendant's residence. There is general agreement, however, that by the time the dust had settled from the ensuing fracas, the victim had suffered a variety of cuts as well as an injury to her ankle serious enough to require her to be transported by stretcher to an ambulance and then taken to a hospital; the defendant had been handcuffed, hit by pepper spray, and struck by a police baton; and four police officers had suffered assorted injuries acquired in the course of their various attempts to subdue the defendant.

On October 22, 2002, the defendant was indicted on seven counts for his role in the events, including one count of domestic assault, one court of disorderly conduct, one count of resisting arrest, and four counts of assault (one per each arresting officer). He was tried before a jury of his peers on December 6, 2004, at which time he was found guilty of domestic assault, resisting arrest, and a single count of assault (on then-Deputy Robert Childs of the Roane County Sheriff's Office). He was sentenced to three concurrent terms of six months probation that same day.

The defendant promptly fired his lawyer and, on May 12, 2005, filed a *pro se* pleading styled "Appeal for the Retrial of John Adrian Day," in which he alleged, *inter alia*, that his

lawyer was incompetent, unprepared, and ineffective. The trial court treated this motion as a motion for new trial and held a hearing concerning the claims on September 20, 2005.[1] At the conclusion of this hearing, the trial court denied the defendant's motion from the bench, but apparently no written order was issued. On November 21, 2005, the defendant filed a notice of appeal, which he labeled (erroneously, as it would turn out) "tardy."

After the filing of this notice, the record reflects that there was no activity in the case until May 20, 2010, when the circuit court clerk suddenly filed the appellate record in this case with the clerk of this court without providing any meaningful explanation for the delay. The parties filed their appellate briefs.

Further communication between the appellate court clerk and the circuit court clerk revealed that there was no minute entry reflecting any disposition on the defendant's *pro se* motion for new trial. Having discovered this jurisdictional defect, this court was forced to remand a previously-filed motion by the State to supplement the record back to the trial court for a determination of whether the transcript of the hearing on the motion for new trial reflected its disposition, and if so for the entry of an appropriate written order. *See State v. Byington*, 284 S.W.3d 220, 223, 226 (Tenn. 2009). The jurisdictional defect was cured by the circuit court's entry of a written order denying the defendant's motion for new trial on March 21, 2011.

We are satisfied that the defendant's appeal is now properly before us. Our opinion follows.

## ANALYSIS

The defendant's pleadings raise at least fifteen different points of error, which appear under headings such as "Right of Protection of Property," "Right to Compulsory Process Violated," "Padding Court Costs," and "Was Officer Nance Acting Under Color of Law Come in Under Rule 402." In an effort to construe the defendant's *pro se* pleadings liberally to further the administration of justice, we have re-organized the defendant's claims into the following groups: (1) claims that the evidence was insufficient to support his convictions; (2) claims that the trial court erred by failing to provide certain jury instructions; (3) claims that the trial court erred by failing to admit certain evidence; (4) claims that his right to confrontation was violated by the trial court's admission of a hearsay statement and by a witness's failure to appear at trial; (5) claims that his speedy trial rights were violated, and related claims that the prosecution committed misconduct by delaying his trial and "padding"

---

[1] By this time, the defendant had completed his probation. The trial court entered an order discharging the defendant from active supervision on September 6, 2005.

his court costs; (6) ineffective assistance of counsel; and (7) claims that his due process rights were violated by the trial court clerk's act of withholding his appeal from the Court of Criminal Appeals, as well as the trial court's failure to afford him a telephone call for thirty hours following his arrest and act of permitting four witnesses to give contradictory testimony at trial.[2]  After reviewing the record, we conclude that the evidence is sufficient to support the defendant's convictions and that most of his remaining claims have been waived.  We also hold that the defendant's due process rights were not violated by the trial court.

# I.

We construe the defendant's brief as challenging the sufficiency of the evidence used to convict him of each crime.  When the sufficiency of the convicting evidence is challenged, the relevant question upon appellate review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011).  In discerning the answer to this question, "the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *See Sisk*, 343 S.W.3d at 65 (internal quotation omitted).  Because "the jury, as the trier of fact, is empowered to assess the credibility of the witnesses, to address the weight to be given their testimony, and to reconcile any conflicts in the proof," its decisions in this regard will not be revisited on appeal. *Id.*  The defendant bears the burden of demonstrating that the evidence is insufficient to support his convictions. *Id.*

The defendant in this case was convicted of simple assault, resisting arrest, and domestic assault.  Assault is committed if an individual "[i]ntentionally, knowingly or recklessly causes bodily injury to another . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury; or . . . [i]ntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." T.C.A. § 39-13-101.  Domestic assault is an assault committed against a "domestic abuse victim." T.C.A. § 39-13-111. Domestic abuse victims include, *inter alia*, "[a]dults or minors who live together or who have lived together." *Id.*  An individual resists arrest by "intentionally prevent[ing] or obstruct[ing] anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at the officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another. T.C.A. § 39-

---

[2]  The State has not interpreted the defendant's brief as raising all of these claims, but it appears to have made a good-faith attempt to interpret and respond to the defendant's sundry allegations.

13-101."

The defendant complains that no testimony from the victim was adduced at trial to provide supporting evidence of his crimes. However, after reviewing the record, we are satisfied that sufficient evidence exists to support the essential elements of each offense. During its case-in-chief, the State presented the testimony of four law enforcement witnesses who testified in detail concerning the defendant's efforts to resist their attempts to arrest him and to the various assaults that he committed upon them. Moreover, the record of this case reveals that evidence sufficient to support most of the essential elements of each of the defendant's convictions can be found in the defendant's own direct testimony. Concerning the domestic assault, the defendant testified that he lived with the victim. He further testified that on the day in question he grabbed a pitcher out of her hands and possibly brushed her with his arm, causing her to fall off the porch, down some steps, and onto the sidewalk. He testified that after all this occurred, he made physical contact with the right side of the victim's body with his boot. Multiple law enforcement witnesses testified that the victim's ankle was bruised and swollen when they arrived at the scene, and one officer added that the victim had cuts on her knee and arm.

Concerning his convictions for assaulting Deputy Childs of the Roane County Sheriff's Department and for resisting arrest, the defendant testified that sometime after the incident involving the victim, he was approached by several officers. At some point during the ensuing conversation Deputy Childs informed him he was under arrest. The defendant testified that he "told them they had no reason to arrest me." The defendant testified that Officer Nance sprayed him with pepper spray, and then he felt someone grabbing his hand and hair. In response, the defendant testified that he attempted to get his hand loose. While the defendant testified that he "had no intention of swinging at anybody," he admitted that he was "trying to protect himself" during the arrest. Officer Childs testified that the defendant stated that he would rather fight than go to jail and that, after being pepper sprayed, the defendant hit him with an insulated oversized coffee mug. Other officers also testified that the defendant hit Officer Childs in the head with a coffee mug.

From this testimony, a reasonable jury was free to conclude that: (1) the defendant lived with the victim; (2) the defendant intentionally engaged in physical contact with the victim that caused her bodily injury; (3) the defendant intentionally engaged in physical contact with Deputy Childs that a reasonable person would find extremely offensive, and (4) the defendant intentionally obstructed someone he knew to be a law enforcement officer from arresting him. The defendant's direct testimony, when read in conjunction with the testimony of other witnesses, provides sufficient basis for a reasonable jury to have concluded that the defendant committed all three crimes beyond a reasonable doubt.

-5-

## II.

The defendant urges that he "was within his rights and was justified under statute 39-11-614 Protection of Property (A) and under statute 39-11-615 Protection of Third Person's Property, in stopping [the victim] from removing property from Mr. Day's House." We interpret this claim as a challenge to the trial court's failure to instruct the jury concerning the defense of protecting the property of another. Section 39-11-615 provides that "[a] person is justified in threatening or using force against another to protect real or personal property of a third person, if, under the circumstances as the person reasonably believes them to be, the person would be justified under § 39-11-614 in threatening or using force to protect the person's own real or personal property." Section 39-11-614 provides that a person is justified in threatening or using force against another "when and to the degree it is reasonably believed the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property." T.C.A. § 39-13-614. The defendant claims that he did not know that his friend had recently sold his goldfish to the victim and appears to claim that he was justified in using force to prevent the victim from taking them because he reasonably believed that he was defending his friend's property.

The defendant did not request a jury instruction concerning the protection of another's property in the trial court, nor did he raise, discuss, or allude to the issue in the pleadings that the trial court construed as his motion for a new trial. Consequently, his claim concerning the trial court's failure to instruct the jury concerning these defenses has been waived. *See* Tenn. R. App. P. Rule 36(a) (Courts not required to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); Tenn. R. App. P. 3(e) ("[N]o issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.").

## III.

The defendant claims that: (1) his "medical records would be relevant evidence under Tennessee Rule of Evidence Article IV, Rule 40, to prove a material issue of whether Mr. Day was struck in the head or back of the thigh," and (2) the victim's "medical records are relevant evidence as the state referred to ambulance or EMS records thirteen times." We construe these statements as claims that the trial court erred by failing to admit this evidence. However, there is no evidence that the defendant moved for the admission of these items at trial, and his claims concerning them are not included in his motion for new trial. We deem

these claims waived accordingly. *See* Tenn R. App. P. 36(a); Tenn. R. App. P. 3(e).

## IV.

The defendant claims that his constitutional rights to confrontation and compulsory process were violated when: (1) one of the police deputies who responded to the domestic disturbance call testified that the victim told him that she had been kicked by the defendant, but the victim herself never testified at trial; (2) the victim's mother never took the stand, even though she had witnessed the events on the day in question; and (3) one of the victim's friends, who also witnessed relevant events and had been served with two subpoenas, failed to attend court. We hold that these claims have been waived but address each more specifically.

Concerning the trial court's decision to admit Deputy Halliburton's hearsay statement to the effect that victim had told him that the defendant had kicked her, the defendant failed to make a contemporaneous objection to this testimony on Confrontation Clause grounds at trial.[3] His motion for new trial complains that "Valerie Hardwick never . . . testif[ied] in court against me" but makes no reference to Deputy Halliburton's testimony or to the Confrontation Clause. Consequently, this claim has been waived. *See* Tenn. R. App. P. 36(a).

We could nonetheless choose to address this claim pursuant to our powers under Rule 36(b), which provides: "When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." The claim at issue involves a substantial right. The Sixth Amendment's Confrontation Clause, made applicable to the States through the due process Clause of the Fourteenth Amendment, *see Pointer v. Texas*, 380 U.S. 400, 406-07 (U.S. 1965), provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." More specifically, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability [of the witness] and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (U.S. 2004). "Testimonial" evidence includes "police interrogations." *Id.* It is not clear from the record that the State ever established the unavailability of the victim as a witness, and the State concedes that the record is "unclear" with respect to whether the victim testified at a preliminary hearing and was previously subject to cross-examination at that time. Consequently, a non-frivolous claim could have been made that the defendant's right to

---

[3] The defendant did object to the statement as hearsay, but this objection was overruled on the grounds that the statement constituted an excited utterance. *See* Tenn. R. Evid. 803(2).

confrontation was violated when the trial court admitted the hearsay statement of the victim, had the defendant taken prompt steps to bring the issue before the trial court,[4] as required by Rule 36(a), and raised the issue in his motion for new trial, as required by Rule 3(e).

However, violations of an accused's right to confrontation are subject to harmless error analysis. *Coy v. Iowa*, 487 U.S. 1012, 1021 (1988); *State v. Cannon*, 254 S.W.3d 287, 306-07 (Tenn. 2008). Two of the defendant's own witnesses testified to the fact that the victim accused the defendant of assaulting her. Various law enforcement witnesses attested to the fact that the victim bore injuries. The defendant himself testified that he assaulted the victim by knocking her off balance while taking a pitcher away from her and by "nudging" her in the side with his boot while she lay on the ground. In light of these and other facts, it appears probable to us that the State would have been able to prove that any violation of the defendant's right to confrontation that may have occurred was harmless beyond a reasonable doubt.

Concerning the defendant's complaints that the victim's mother and the victim's friend witnessed events but never testified, the defendant failed to raise these issues contemporaneously in the trial court and consequently failed to take all necessary steps to nullify any harmful effect of any error that may have occurred. Therefore, these claims have been waived. *See* Tenn. R. App. Pro. 36(a). Moreover, we are aware of no precedent, and have been cited to none, that would support the proposition that the Confrontation Clause requires the State to call as witnesses at trial any and all individuals who may have actually witnessed relevant events.

The defendant's compulsory process claim with respect to the failure of the victim's friend to take the stand has likewise been waived by his failure to file the appropriate motions in trial court. We do not believe notions of justice require this court to ignore the defendant's waiver, because the defendant's claim suffers from several apparent defects. While defendants in criminal cases have the right under both the federal and state constitutions to compulsory process for obtaining witnesses in their favor, *see* U.S. CONST. AMEND. VI; TENN. CONST. ART. I, § 9, the record does not conclusively establish that the defendant ever sought to subpoena this witness to appear on the day that his trial actually occurred. While the defendant has alleged with respect to the witness that "two subpoenas were served," he does not specify whether the State or defense issued the subpoenas. In a related issue, he has not alleged (much less established) that the victim's friend's testimony would have been favorable to his cause – and the testimony of other defense witnesses at trial concerning the

---

[4] "[P]re-trial *in limine* procedures should be utilized to resolve issues relating to the admissibility of out-of-court statements, such as whether the witness making the out-of-court statement truly is unavailable to testify." *State v. Cannon*, 254 S.W.3d 287, 306 (Tenn. 2008).

victim's friend's feelings toward the defendant and toward the victim strongly implies that any testimony from this individual would have been unfavorable. The defendant offered no evidence whatsoever in the trial court concerning what this witnesses' testimony would have been. Under these circumstances, we are not inclined to ignore the defendant's waiver.

## V.

The defendant argues that the prosecution committed misconduct and violated his Fifth Amendment rights by delaying his prosecution and intentionally padding court costs. The defendant alleges that the prosecution intentionally delayed his trial for three and a half years after his arrest. He also claims that changes in trial dates required him to pay for additional subpoenas (forty-five in total for twelve people, at a cost of $22.50 each), and appears to claim that the prosecution delayed his trial in order to further "pad" his court costs. In a related argument, the defendant claims that his speedy trial rights were violated by the prosecution's delay. The State does not directly respond to the defendant's prosecutorial misconduct claims, but urges that the defendant has waived his speedy trial claim by virtue of his failure to raise it in a pretrial motion to dismiss.

The defendant's complaints concerning the delay between his arrest and his trial (and the ensuing financial burden of the subpoenas) should have been brought to the trial court's attention in a pretrial motion. The record reflects that the defendant did not raise these issues until after he was convicted. Consequently, these claims have been waived. *See* Tenn. R. App. Pro. 36(b).

We decline to look past the defendant's waiver because, *inter alia*, the reasons for the three and a half year delay are not apparent from the record.[5] Proper legal analysis of both of the defendant claims – his Sixth Amendment right to a speedy trial and his Fifth Amendment right to be free of prosecutorial misconduct with respect to the timing of his indictment – require this court to consider the reasons for the State's delay in prosecuting or trying the case (and whether any delay has been prejudicial to the defendant) before providing relief. *See State v. Bishop*, 493 S.W.2d 81, 83-85 (Tenn. 1973) (holding factors relevant to analysis of Sixth Amendment speedy trial claim include "(1) the length of the delay; (2) whether the defendant asserted her right to speedy trial; (3) the prejudice emanating from the delay; and (4) the reason for the delay"); *Halquist v. State*, 489 S.W.2d 88, 93 (Tenn. Crim. App. 1972) ("[C]ourts have recognized that an unreasonable delay between the commission of the offense and the arrest may violate the defendant's

---

[5] The transcript from the hearing on the defendant's motion for a new trial indicates that the defendant's trial was postponed at least once because the trial court elected to try a different case possessing higher docket priority.

constitutional rights if the delay results in prejudice to him or was part of a deliberate, purposeful and oppressive design for delay."). In general, "[t]he burden is upon the accused to show that the delay . . . was prejudicial and not for a legitimate reason." *State v. Baker*, 614 S.W.2d 352 (Tenn. 1981). Because the record is silent with respect to the reasons for the delay and because the defendant has not established prejudice, the defendant has not carried this burden.

## VI.

By far the most vehemently pressed of the defendant's arguments is that he received ineffective assistance of counsel. As the State observes, raising a claim of ineffective assistance of counsel on direct appeal is strongly disfavored and "fraught with peril." *State v. Thompson*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997). However, we cannot reasonably construe the defendant's brief as failing to raise such a claim; it is the crux of his appeal. The defendant alleges that his trial counsel did not interview witnesses before trial, did not prepare witnesses before court, came to court without any notes, had no witness list, failed to call four witnesses, failed to secure relevant medical and school records, "refused to ask questions we agreed should be asked," and failed to file an appeal after assuring the defendant that he would do so. However, the defendant has not established his entitlement to any relief based on these alleged deficiencies.

To establish ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced the defendant. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Strickland*, 466 U.S. at 697. To establish prejudice, the defendant must show that but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

The defendant put on virtually no proof with respect to any of these allegations in the court below. At the hearing on his motion for new trial, the defendant put forth two witnesses, neither of which testified concerning the performance of his trial counsel. While the defendant himself took the stand and testified concerning his complaints with trial counsel's performance, his testimony on this subject consisted of solely of conclusory statements. He did not provide any nexus between these alleged deficiencies and his convictions. Consequently, on this record, the defendant has not demonstrated entitlement to any relief and his claim is denied accordingly.

## VII.

-10-

The defendant claims that the trial court violated his due process rights on several grounds. Concerning the fact that he was allegedly not afforded a telephone call for thirty hours after his arrest and the fact that four witnesses for the State allegedly gave inconsistent testimony at trial, we hold that these claims are waived by the defendant's failure to include them in his motion for new trial, and we conclude that notions of justice do not compel us to engage in any further review.

The defendant's claim that his due process rights were violated by the trial court clerk's failure to submit the appellate record to this court for nearly five years was not available to him at the time that he filed his motion for a new trial and has not been waived. However, the Sixth Circuit in general, and Tennessee in particular, have not yet recognized a due process right to speedy resolution of the appellate process. This case provides no compelling justification for the creation of such a right.

Even jurisdictions that generally recognize a due process right to speedy appellate review generally require a defendant to show both an assertion of his right and prejudice resulting from any delay as essential parts of establishing such a claim. *See, e.g., Burkett v. Cunningham*, 826 F.2d 1208, (3rd Cir. 1987); *DeLancy v. Caldwell*, 741 F.2d 1246 (10th Cir. Okla. 1984); *Rheuark v. Shaw*, 628 F.2d 297, 302 (5th Cir. 1980). The defendant has established neither. There is no indication anywhere in the record that the defendant ever checked on the status of his appeal or attempted to file an appellate brief at any point prior to 2010. Consequently, the defendant shares a portion of the blame for the extended delay in the filing of the appellate record and any resulting delay in the processing of his appeal. As we have stated repeatedly, this court does not generally grant relief to a party who fails to take whatever action is reasonably available to prevent or nullify the harmful effect of an error. Consequently, the defendant has not established that he sufficiently asserted his rights to be entitled to relief – even if Tennessee were to recognize this form of due process claim.

In addition, the defendant cannot establish prejudice on this record. Courts have interpreted "prejudice" in the context of an assertion of a right to a speedy appeal to mean "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal or retrial, might be impaired." *Rheuark*, 628 F.2d at 303 n.8; *see also Delancy*, 741 F.2d at 1248. The record reflects that this defendant was not incarcerated and was released from probation prior to filing his notice of appeal. The fact that the defendant did not check on the status of his appeal for nearly five years is persuasive evidence that the defendant was not suffering from any excessive anxiety or concern regarding its disposition. Finally, the delay at issue has not limited or impaired any of the claims that he presented in the appeal, which were largely lost as the result of his failure to take proper steps to preserve them in the

-11-

trial court long before the notice of appeal was filed. Consequently, we conclude that this case presents no compelling reason for this court to consider whether to recognize a due process right to speedy appellate review.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
JOHN EVERETT WILLIAMS, JUDGE