# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs December 6, 2011

## ARTHUR LEE TAYLOR v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court of Madison County**
**No. C-09-192      Donald H. Allen, Judge**

---

**No. W2011-00027-CCA-R3-PC  - Filed February 7, 2012**

---

Arthur Lee Taylor ("the Petitioner") filed for post-conviction relief from his convictions of possession of cocaine with intent to sell and/or deliver and possession of dihydrocodeinone and his resulting effective thirty-year sentence as a career offender. He alleges that he received ineffective assistance of counsel at his jury trial. After a hearing, the post-conviction court denied relief, and this appeal followed. Upon our careful review of the record, we affirm the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Robert Brooks, Memphis, Tennessee, for the appellant, Arthur Lee Taylor.

Robert E. Cooper, Jr., Attorney General & Reporter; David H. Findley, Senior Counsel; Jerry Woodall, District Attorney General; Shaun A. Brown, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Petitioner was indicted for one count of possessing more than .5 grams of cocaine with intent to sell; one count of possessing more than .5 grams of cocaine with intent to deliver; one count of possessing dihydrocodeinone with intent to sell; and one count of possessing dihydrocodeinone with intent to deliver. The Petitioner was tried before a jury. On our review of the Petitioner's convictions on direct appeal, we summarized the proof adduced at trial as follows:

Investigator Yarbrough testified that about 1:15 a.m. on March 11, 2004, he parked his unmarked truck at the Bull Market on Hollywood Drive in Jackson. He said that the convenience store was in a known drug trafficking area and that he had received several complaints about people selling drugs at the store late at night. Investigator Yarbrough was sitting in his truck and was about five to six feet away from the gas pumps when he saw the [Petitioner's] car pull up to one of the pumps. The [Petitoner] got out and put the gas pump nozzle into the tank of his car but never pumped any gas. A second car pulled up to the pumps, and a white male got out of the car. The white male and the [Petitioner] spoke for a few seconds, and the [Petitioner] pulled out a plastic bag containing a white substance. Investigator Yarbrough saw the [Petitioner] take a piece of the white substance out of the bag and give it to the white male. The male then handed the [Petitioner] some money. Investigator Yarbrough was unable to block the white male's car, and the male drove away from the store. Investigator Yarbrough pulled up behind the [Petitioner's] car, turned on his blue lights, approached the [Petitioner], and told the [Petitioner] what he had seen. He saw the plastic bag sticking out of the [Petitioner's] left pants pocket, and the bag still contained the white rock. The [Petitoner] kept trying to put his left hand in his pocket despite Investigator Yarbrough's telling him to stop. Investigator Yarbrough told the [Petitioner] to put his hands on the car, and the [Petitoner] said, "Okay, you got me." Investigator Yarbrough took the plastic bag from the [Petitioner] and waited for backup.

Investigator Yarbrough testified that Deputy Lynette Bradley arrived, patted down the [Petitioner], and found a hydrocodone pill. Investigator Yarbrough did not find any items, such as a crack pipe, on the [Petitioner's] person to indicate that the [Petitioner] had possessed the drugs for personal use. However, he found $136 and a cellular telephone on the [Petitioner's] person. He said the crack cocaine in the plastic bag weighed 4.5 grams and had a street value of $450. He said that cocaine users usually bought 0.1 to 0.2 grams of the drug for $10 to $20 and that a person's possessing more than 0.5 grams usually meant the drug was for resale.

On cross-examination, Investigator Yarbrough testified that in the two months before the [Petitioner's] arrest, he had made two or three other arrests at the store. He stated that the gas pump was not blocking his view of the [Petitioner] and that the [Petitioner] was at the pump for about forty-five seconds before the second vehicle pulled up. He did not remember what kind of car the white male was driving and did not get the car's license tag number. He stated that the area was well-lighted and that he could see the transaction

by looking through his truck's windshield. He acknowledged that the cocaine recovered from the plastic bag could have been an "eight ball" and that a person could buy an "eight ball."

Deputy Julie Lynette Bradley from the Madison County Sheriff's Department testified that on March 11, 2004, she went to the Bull Market convenience store to pick up the [Petitioner] and transport him to the sheriff's department. When she arrived, she patted down the [Petitioner] for her safety and felt a small object in his left pants pocket. When she pulled out the object, she saw that it was a pill. On cross-examination, Deputy Bradley testified that she did not remember if the pill was in a bag, was wrapped in something, or was by itself. She gave the pill to Investigator Yarbrough.

Jessica Webb of the Tennessee Bureau of Investigation (TBI) testified that she analyzed the evidence recovered in this case. The plastic bag contained cocaine, and the pill was dihydrocodeinone.

The [Petitioner] testified that he was fifty-five years old at the time of trial. He stated that on March 11, 2004, he pulled up to the gas pumps at the Bull Market convenience store and "bought the, you know, crack cocaine from the dude when he pulled up." He stated that he bought "[a] ball," which weighed about 3.5 grams, and that he paid $150 for it. He said the white male also sold him the dihydrocodeinone pill and told him that he "ought to try that."

On cross-examination, the [Petitioner] testified that he had purchased drugs from the white male previously and that he knew the man as "Mark." He stated that he walked up to Mark's car, that Mark never got out of the car, and that Investigator Yarbrough was lying. He stated that he and his "partner" were going to smoke the crack cocaine and that he had left his crack pipe at home.

State v. Authur Lee Taylor, No. W2006-01104-CCA-R3-CD, 2008 WL 4117968, at *1-2 (Tenn. Crim. App. Sept. 3, 2008).

After the close of proof, the trial court instructed the jury as to the cocaine offenses as follows:

> Counts 1 and 2, Possession With the Intent to Sell or Deliver. Any person who knowingly possesses with the intent to sell or deliver a controlled substance is guilty of a crime.
>
> For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> (1) that the defendant knowingly possessed cocaine, a Schedule II controlled substance; and
>
> (2) that the defendant intended to sell or deliver such controlled substance.

The jury convicted the Petitioner of the cocaine offenses as charged. The jury convicted the Petitioner of the lesser-included offenses of simple possession on the dihydrocodeinone charges. The trial court subsequently merged the cocaine offenses into a single conviction of possession with intent to sell and/or deliver more than .5 grams of cocaine, a Class B felony. The trial court also merged the dihydrocodeinone offenses into a single conviction of simple possession, a Class A misdemeanor. After a sentencing hearing, the trial court sentenced the Petitioner as a career offender to thirty years on the cocaine offense and to a concurrent term of eleven months, twenty-nine days on the dihydrocodeinone offense. This Court affirmed the Petitioner's convictions and sentences. Authur Lee Taylor, 2008 WL 4117968, at *1.

The Petitioner filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel. At the hearing, the Defendant's lawyer asked that the post-conviction court make its ruling on the basis of the trial record. No other proof was adduced. Upon its review of the trial record in light of the allegations of ineffective assistance of counsel, the post-conviction court denied relief. This appeal followed.

## Analysis

### Standard of Review

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of

-4-

the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[1] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106,

---

[1] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

116 (Tenn. 2006) (quoting <u>Strickland</u>, 466 U.S. at 688)). Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

<u>Baxter</u>, 523 S.W.2d at 934-35 (quoting <u>Beasley v. United States</u>, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." <u>Howell v. State</u>, 185 S.W.3d 319, 326 (Tenn. 2006) (citing <u>Strickland</u>, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>State v. Honeycutt</u>, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting <u>Strickland</u>, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. <u>Rhoden v. State</u>, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." <u>Cooper v. State</u>, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." <u>Vaughn</u>, 202 S.W.3d at 116 (citing <u>Strickland</u>, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." <u>Pylant</u>, 263 S.W.3d at 869 (citing <u>State v. Burns</u>, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of <u>Strickland</u>." <u>Id.</u>

*The Petitioner's Claims*

In support of his claim of ineffective assistance of counsel, the Petitioner first contends that his trial lawyer ("Trial Counsel") "failed to object . . . to the verdict of the jury which amounted to a constructive amendment of the indictment" and failed to raise this issue

in the motion for new trial, such that it was deemed waived on direct appeal. See Taylor, 2008 WL 4117968, at *3. The Petitioner explains his contention as follows:

> In the present case, Count 1 of the indictment alleged that [he] possessed cocaine with the intent to sell, and Count 2 alleged that [he] possessed cocaine with the intent to deliver. The court's instruction allowed the jury to find the [Petitioner] guilty if he possessed the cocaine with the intent to sell or deliver. Delivering was not included in Count 1, and selling was not included in Count 2. The instructions given by the Court erroneously permitted the jury to find the [Petitioner] guilty on a basis not charged in both Count 1 and Count 2 of the indictment.

> Either the indictment was multiplicitous, or the instruction of the court constructively amended the indictment into one which was multiplicitous. In either event, the [Petitioner] was convicted of offenses with which he was not charged. His conviction must, therefore, be reversed.

As a second basis for his claim of ineffective assistance of counsel, the Petitioner contends that Trial Counsel should have requested that the State be required to make an election of offenses.

The Petitioner misapprehends the law regarding offenses charged in the alternative and election of offenses. After reviewing the record of the Petitioner's trial, we see no ineffective assistance by Trial Counsel regarding either of these legal concepts.

Tennessee Code Annotated section 39-17-417 (2003) makes it a crime for a person to "knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver *or* sell such controlled substance." Tenn. Code Ann. § 39-17-417(a)(4) (emphasis added). The offense has three elements: (1) knowing possession, (2) of contraband, (3) with the intent to manufacture, deliver, or sell it. Thus, the crime can be committed with any of the three proscribed intents and can, accordingly, be charged in separate *alternative* counts with each count specifying one of the three proscribed intents. As we have previously made clear, "[t]he state may charge different means of conducting the same drug transaction in anticipation of the uncertainty of the evidence." State v. Artez L. Moreis, No. W2002-00474-CCA-R3-CD, 2003 WL 1860537, at *5 (Tenn. Crim. App. Apr. 2, 2003) (citing State v. Beard, 818 S.W.2d 376, 378 (Tenn. Crim. App. 1991)). And where, as here, the jury convicts the defendant of more than one alternative count of the charged offense, the trial court should merge the guilty verdicts into a single conviction. See, e.g., id.; see also State v. Clifton Dechance Harrison, No. E2007-00344-CCA-R3-CD, 2007 WL 4207910, at *5 (Tenn. Crim. App. Nov. 29, 2007) ("Under the doctrine of merger, findings of guilt on two

or more offenses result in only one conviction."). Where the trial court merges multiple convictions arising from a single offense, double jeopardy concerns are avoided.[2] See, e.g., State v. Addison, 973 S.W.2d 260, 266-67 (Tenn. Crim. App. 1997) (recognizing that the merger of dual convictions for premeditated murder and felony murder arising from a single killing protects against double jeopardy).

The merger of guilty verdicts on alternative counts into a single conviction similarly avoids concerns with multiplicity. "Multiplicity is the term applied to the improper charging of the same offense in more than one count." State v. Desirey, 909 S.W.2d 20, 27 (Tenn. Crim. App. 1995). "The principle danger of a multiplicitous indictment is that the [d]efendant will receive multiple sentences for a single offense." State v. Young, 904 S.W.2d 603, 606 (Tenn. Crim. App. 1995). The remedy for multiple convictions founded on a multiplicitous indictment is merger of the offenses. See State v. Rhonda Patricia Mayes, M2001-00423-CCA-R3-CD, 2002 WL 1585643, at *6-7 (Tenn. Crim. App. July 18, 2002).

The Petitioner was charged with alternative counts of violating Tennessee Code Annotated section 39-17-417(a)(4). Count one alleged that he possessed cocaine with the intent to sell it. Count two alleged, in the alternative, that he possessed the cocaine with the intent to deliver it. Both counts were based on the same operative facts, facts that established only a single criminal offense. See State v. Johnson, 765 S.W.2d 780, 781-82 (Tenn. Crim. App. 1988) (holding that double jeopardy bars convictions for both possession with intent to sell and possession with intent to deliver where both convictions are based upon the same transaction); State v. Damon T. Patrick, No. E2001-100456-CCA-R3-CD, 2002 WL 181358, at *3 (Tenn. Crim. App. Feb. 1, 2002) (same). The jury convicted the Petitioner of both counts. The trial court subsequently merged the two findings of guilt into a single conviction and correctly entered a single judgment of conviction. The Petitioner received only one sentence on his cocaine offense.[3] We discern neither deficient performance by Trial Counsel in this regard, nor prejudice to the Petitioner. Therefore, the Petitioner is entitled to no relief on this allegation of ineffective assistance of counsel at trial.

We turn now to the Petitioner's claim that Trial Counsel should have demanded that the State make an election of offenses. Our summary of the proof adduced at trial, set forth above, makes clear that the arresting officer testified as to only a single drug transaction between the Petitioner and another individual. Where only a single transaction is at issue, an election of offenses is not necessary. See State v. Adams, 24 S.W.3d 289, 294 (Tenn.

---

[2] Principles of double jeopardy prohibit the imposition of multiple punishments for a single crime. See State v. Denton, 938 S.W.2d 373, 378-79 (Tenn. 1996).

[3] The trial court similarly merged the two guilty verdicts on the dihydrocodeinone offense into a single conviction and sentenced the Petitioner accordingly.

2000) ("When the evidence does not establish that multiple offenses have been committed, . . . the need to make an election never arises."); see also State v. Beard, 818 S.W.2d 376, 379 (Tenn. Crim. App. 1991) (recognizing that, "where the several counts of an indictment are based upon the same transaction, the State cannot be required to elect to proceed upon one count or the other") (quoting Halquist v. State, 489 S.W.2d 88, 92 (Tenn. Crim. App. 1972)). Jury unanimity concerns are simply not implicated where the jury is considering proof of only one offense. Moreover, as set forth in Tennessee Code Annotated section 40-18-112, where the single crime may be committed by different means or with different intents, jury unanimity is not required as to the particular means or intent:

> Where the intent with which, the mode in, or the means by which, an act is done are essential to the commission of the offense, and the offense may be committed with different intents, in different modes, or by different means, if the jury is satisfied that the act was committed with one (1) of the intents, in one (1) of the modes, or by either of the means charged, it shall convict, although uncertain as to which of the intents charged existed, or which mode, or by which of the means charged, such act was committed.

Tenn. Code Ann. § 40-18-112 (2003). See also State v. Bowman, 327 S.W.3d 69, 99 (Tenn. Crim. App. 2009) (recognizing that, "in cases involving a single offense but alternate theories for the defendant's committing the offense, jury unanimity problems are not implicated"); State v. Julio Ramirez, No. M2009-01617-CCA-R3-CD, 2011 WL 2348464, at *21 (Tenn. Crim. App. June 8, 2011), perm. appeal denied (Tenn. Sept. 21, 2011) (recognizing that, "[g]enerally, . . . alternative theories, mental states, modes of committing the crime, or means by which the crime was committed may be submitted to the jury without the necessity of precautions to assure jury unanimity") (internal quotation marks omitted). Accordingly, Trial Counsel committed no error in failing to request that the State be required to make an election of offenses.

## Conclusion

The Petitioner has failed to prove by clear and convincing evidence that Trial Counsel was ineffective at trial. Accordingly, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE